STATE of Missouri, Respondent,

v.

Danny LANSFORD, Appellant.

No. 61131.

Supreme Court of Missouri,
En Banc.

Feb. 11, 1980.
Rehearing Denied March 11, 1980.

618

C. Clifford Schwartz, Jr., Shaw, Howlett & Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Mike H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Being convicted of arson under § 560.010, RSMo 1969, appellant appealed to the Eastern District of the Court of Appeals wherein his cause was submitted to a seven member panel thereof. A majority of four reversed the conviction because there was " . . . no evidence that the fire was communicated to any combustible part of the building, or that as the result of the fire there was any altering or destruction of any component part of the building . . ." but, nevertheless, did remand to the trial court because the " . . . evidence in the record now before us clearly established an attempt to commit arson in violation of § 560.035 RSMo 1969 . . .." The three dissenting members of the panel disagreed, generally, because " . . . the crime of arson is complete when, with incendiary intent, the defendant brings a burning flammable into contact with the structure or its furnishings. That the structure itself 'burns' is not a necessary element under the statute which defines the offense to include *setting fire to*." (Emphasis added.)

Assuming that the record did not reflect an actual "burning", we ordered transfer that this Court might resolve whether or not that portion of the statutory language,[1] *i. e.,* "set fire to" was synonymous with

1. Section 560.010, in effect at the time of the offense, provided in part that: "Every person who shall willfully set fire to or burn any dwelling house . . . shall be adjudged guilty of arson . . .."

"burn" or, standing alone, could sustain a conviction for arson; because it appears that cases in Missouri have differed as to whether a violation of the statute requires there be a burning as that term was defined by common law.[2] In *State v. Myer*, 259 Mo. 306, 168 S.W. 717 (1914), this Court stated, l.c. 719, that:

"The language of the statute upon which the information is based is, in the charging part, that 'every person who shall willfully set fire to or burn,' etc.; it will be seen that the offenses are disjunctively denounced in the statute, and the first is completed if fire is set to any building, therein named in an attempt to burn same, and an allegation to that effect is therefore sufficient. It is a mere trifling with words to say that where it is alleged in the language of the statute, as it is here, that the defendant 'unlawfully and feloniously set fire to' the building named, only an attempt to commit the crime is charged, because the explanatory words 'and attempt to burn' follow the principal allegation in the information. If such explanatory words have any effect, they serve to inform the defendant more definitely of the nature of the crime with which he is charged, and, so far as the sufficiency of the indictment is concerned, it is immaterial whether they be regarded as explanatory words, or be rejected as surplusage."

Compare, however, the holding in *State v. Witham*, 281 S.W. 32 (Mo.1926), wherein this Court, l.c. 34, quoted with approval from Kelley's Criminal Law, § 620: "Thus, setting fire to paper or other combustible matter in the house, without burning the house, is not arson. But if any part of the house, however trifling, be burnt, though the fire be afterward extinguished, it is sufficient."

Having now reviewed the entire record on appeal, we have concluded that any effort to reconcile previous holdings of this court is unnecessary for two reasons: (1) effective January 1, 1979, the definition of *arson* was changed by S.B. 60, Laws 1977, to read (§ 569.040, Mo.Supp.1977) in part that: "A person commits the crime of arson . . . by starting a fire or causing an explosion . . ." and (2) our belief that the record shows an act of arson under any recognized definition.

Mr. and Mrs. Parmentier were the owners of a two-story frame house located on the corner of Washington and State streets in the City of Union. Jesse Hulsey, his wife, and two sons lived on the first floor, and four or five college students lived on the second floor. During the evening of August 25, 1975, David Pracht, Glen McKay, Jerry McKay and appellant were riding around in David's car drinking beer, and the latter testified for the state as to the commission of the alleged crime. Glen said, "Let's burn down the niggers' house." David answered, "all right," and appellant, according to David, said "sure" and "kind of giggled." The four then went to a service station where David worked and obtained two quart size oil cans with gasoline. He testified that as they rode around they discussed how they would burn the house; that soon after midnight, he dropped off appellant, Glen and Jerry at a parking lot near the Hulsey house and drove to a nearby root beer stand; that a few minutes later appellant ran down the street, jumped in the automobile, said "Let's get the hell out of here," and, apparently referring to one of the oil cans, said "mine went right through the front door." When Glen and Jerry came to the car, they also said that appellant's can "went right through the front window" or "front door" and that appellant replied: "Yes, I know." It was a rainy evening.

<hr>

2. At common law the crime of arson consisted of the malicious and willful burning of a house or outhouse of another. 4 Bl. Comm. 219. Within that definition the element of "burning" was satisfied where any part of the wood be charred, if the fiber of the wood be destroyed or its identity changed, a burning of the small-

est part. Curtis, The Law of Arson, §§ 82 and 83. It also is said therein, § 83, that: "A house is not burned within the meaning of an accusation of arson when it is merely scorched, or smoked, or discolored by heat, but little more is required."

It is agreed that the house had a front porch with a concrete floor and wooden pillars with a wooden banister.

Several witnesses, including Mr. and Mrs. Hulsey, testified as to the sound of breaking glass, an extra bright light, the smell of gasoline, flames and that, as he said, it "looked like the house was on fire." Burning cans were seen with "a rag or something" in the end of each. Mr. Hulsey testified that there was "a little bit [of fire] on the corner of the porch and inside the doorway leading upstairs." Under cross-examination, he agreed with the suggestion that the only fire there was contained in the cans. When asked if there was "a scorch mark on the corner of the porch that you described," he answered, "Yeah, light blaze, you know, gasoline. Kind of blue and white looking." He said the paint was blistered.

A police officer, Sgt. Greg Paffrath, testified:

Q. What did you see, sir?

A. As I arrived at the scene I observed—there was a porch to this residence and there's pillars on the front of the residence and the front porch was on fire. And there was two cans and one of the cans was on fire yet.

Q. How far were those cans from the porch, Sergeant Paffrath?

A. One of them was still on the porch. Northern part of the front porch. And the second was approximately three foot from the porch, southern edge.

Q. I believe you testified the porch was on fire?

A. Yes, it was.

    *    *    *    *    *    *

Q. And when you saw that the porch was on fire, sir, do you mean that area that was part of the house?

A. Yes.

Q. And was that also put out with the fire extinguisher, sir?

A. Yes, it was.

    *    *    *    *    *    *

Q. What was the condition of the porch when you saw it?

A. It was flaming.

Q. And the cans, what was their condition when you saw them?

A. They were also flaming.

Throughout rather intense cross-examination, the witness stated repeatedly that the "pillar by the porch" was on fire and isolated that flame from that confined in the oil cans.

The jury apparently believed Sgt. Paffrath, whose testimony was sufficient to satisfy any requirement that the fire was communicated to the residential building; and, thus, was adequate to sustain a charge of arson.

■ Appellant alleges that the trial court erred in not sustaining his request for a continuance, made on the day of trial, because the state had waited until the morning thereof to provide "statements" presumably made by each of the McKays. The original request for the same, according to appellant's brief, was based on subdivisions (A)(2) and (A)(9) of Rule 25.32,[3] and had been sustained approximately three months prior to trial. In response, the state challenges the contention by asserting the Rule is not relevant because the two McKays were not called as witnesses or charged as codefendants. Such a position perhaps has merit, but, it is deemed better to resolve the issue otherwise. As a matter of practice, the court order should have been complied with promptly after its entry; but, under the record presented the argument is rejected. At the original hearing, wherein the order for delivery of the statements was considered, it was apparent to all that each McKay had made a statement inculpatory

---

**3.** Rule 25.32(A)(2) reads: "Any written or recorded statements and the substance of any oral statements made by the defendant or by a codefendant, a list of all witnesses to the making, and a list of all witnesses to the acknowledgment, of such statements, and the last known addresses of such witnesses."

of himself as well as appellant and discussion was rather extensive as to any benefit appellant might realize therefrom. Notwithstanding the fact no sure benefit could be ascertained, the trial court ruled correctly. *State v. Aubuchon,* 381 S.W.2d 807 (Mo. 1964); *State v. Scott,* 479 S.W.2d 438 (Mo. banc 1972). Did the belated compliance prejudice appellant? There is no showing that it did. After trial and time for reflection, appellant fails to make any effort to show how the delay prejudiced him or how either statement could have led to evidence beneficial to his defense. The crux of the argument is that " . . . counsel should not be required to make a hurried decision [the morning of trial] as to the legal ramifications of a statement . . . ." With this, we agree; but, finding no prejudice the argument is denied.

██ Complaint is made that the state failed to endorse witness Woodrow Jenkins, a police officer, until the week of trial. His testimony was brief and only that he had stopped a car, containing the four alleged participants, about a block from the scene, during the time of the fire and that each was "wet." The same information was available to appellant in a police report provided over two months before trial and no "surprise" or "prejudice" is established. A request for a continuance because of a late endorsement of a witness is directed to the discretion of the trial court and we find no abuse of the same in this instance. Rule 24.17. *State v. Strawther,* 476 S.W.2d 576 (Mo.1972).

██ In another "failure to disclose" argument, it is contended that the state should have provided to appellant a copy of Police Report No. 826–75, which was mentioned in the police report actually delivered pertaining to the arson offense herein involved. No. 826–75, pertaining to an earlier event, contained a recitation of an officer's belief that appellant and others "were involved in an incident with racial overtones on July 17, 1975." Request for the same was made by appellant on day of trial although knowledge of its existence occurred over two months before. The trial court found that: " . . . there's been nothing said to indicate that it does contain any reference to evidence favorable to the Defendant or that it contains information which might lead to the discovery of evidence favorable to the Defendant . . ." and appellant, now, fails to demonstrate why denial of the requested continuance was an abuse of discretion or that it contributed in any manner toward an unfair trial.

Two alleged errors pertain to instructions requested by appellant but not given, and we find both lack merit.

██ The first, Instruction A, would have directed a verdict of "attempted arson" if the jury found appellant "attempted but failed to set fire to a dwelling house." A similar argument was rejected in *State v. Purvis,* 525 S.W.2d 590 (Mo.App.1975), after an extensive historical review of the law by Swofford, P. J., wherein it was noted (l.c. 596) that § 556.160, RSMo 1969, was first adopted in 1855 and remaining substantially unchanged, yet provided: "No person shall be convicted of an . . . attempt to commit any offense, when it shall appear that . . . the offense attempted was perpetrated . . . ." Relative to the immediate issue, the court said, l.c. 597[13], that: "Under the present statutes governing the crime of arson there are no degrees or grading of the felony. A person charged, if convicted, is either guilty of arson (Section 560.025 RSMo 1969) or of attempted arson (Section 560.035 RSMo 1969), and if evidence of arson is before it, the only choices open to a jury are conviction or acquittal for that offense."

██ The second, Instruction B, would have told the jury that because the state failed "to call all of their witnesses in this case, you can presume that the evidence they would give would be unfavorable to them." It seems agreed that Officer Terry Haden is the missing witness involved. He had been subpoenaed by the state but left during the course of the trial. Officer Jenkins had testified that Officer Haden "pulled up" about the same time he had

stopped the car with the four occupants near the fire. The general rule "is that an unfavorable inference may be drawn by defendant from failure of the state to call as its witness one who was available and who might reasonably be expected to give testimony in its favor. [Citations] However, this rule has the limitation that unfavorable inferences may not be drawn from the failure to produce a witness whose testimony would be merely corroborative of, or cumulative to, testimony of another witness . . . ." *State v. Wallach*, 389 S.W.2d 7 at 13[4–6] (Mo.1965). The facts existing here fall clearly within the recognized exception noted and the trial court was correct in so ruling. See also *State v. McClain*, 531 S.W.2d 40 (Mo.App.1975), l.c. 45, that: "The State has no obligation to call all witnesses known to it, and this is true even though the prosecution may have endorsed the name of the person in question upon the information as a potential witness." Defendant, here, has not shown any effort by the state to hide anything from the appellant or any prejudice by the witness not remaining at the trial until its conclusion.

Lastly, complaint is made to a portion of the state's closing argument in two instances: (1) " . . . and you heard testimony, you've heard all this argument about Mr. Pracht. One thing, you have not heard word one of evidence testifying that he was wrong or lying. Not one word . . . The evidence there is by David Pracht is unrebutted;" (2) "Well, good heavens, it's 8:35. I could bring in a parade of witnesses; how much does it take to convince people? We heard both of the Hulseys— [objection]."

The appellant's objection to each argument was sustained and the jury was admonished to disregard but the request for a mistrial was denied in each instance.

■ The record sustains, without question, the right of the state to present the first argument in retaliation to the closing argument of appellant's counsel wherein he sought to discredit totally the state's main witness—Mr. Pracht. For instance: "Now jurors, if Danny Lansford did anything on that evening, you have to agree with Mr. Paffrath—what's his—David—whatever, I've forgotten his name. You have to believe him. You have to believe that this incredible person is telling you completely and totally the truth each time that he testified and that Danny Lansford is a liar. And you have to believe that what he said initially is not the complete truth but that his memory has gotten better as he testified in this courtroom today." It takes a rather strained approach to declare that the retaliatory argument was intended for any other purpose and, in any event, the court's admonishment removed any question.

■■ We reach the same conclusion as to the second argument although it is certainly true that the state cannot insinuate that it knows of facts showing guilt which are not before the jury. The record does not suggest as much in this case as, again, the comment seems retaliatory to defense counsel's position there was never a fire communicated to the building. Within context it was nothing more than an emphatic statement that a sufficient number of persons seeing the fire had been called to testify. If improper, the trial court ruled correctly in sustaining the objection made to it but not declaring a mistrial. The trial court has a wide discretion in controlling arguments of counsel and we find no abuse in this instance. "The declaration of a mistrial is a drastic remedy, utilized only when the prejudicial effect of the error can be removed in no other way." *State v. Blockton*, 526 S.W.2d 915, 918 (Mo.App.1975).

Finding no reversible error, the judgment is hereby affirmed.

BARDGETT, C. J., DONNELLY, RENDLEN, SEILER, WELLIVER, JJ., and WELBORN, Special Judge, concur.

HIGGINS, J., not participating because not a member of the Court when cause was submitted.