**STATE of Missouri, Respondent,**

v.

**Craig R. KELSO, Appellant.**

**No. WD 32037.**

Missouri Court of Appeals,
Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1981.

Application to Transfer Denied
July 14, 1981.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and MANFORD and KENNEDY, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for arson first degree. The jury affixed punishment at 15 years. The judgment is affirmed.

Appellant presents one point of error on appeal, charging that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient, as a matter of law, to sustain a conviction of arson first degree because it was not proven that there was damage to an inhabitable structure within the meaning and requirements of § 569.040, RSMo 1978. Since appellant attacks the sufficiency of the evidence, detailed reference thereto will be made by the court.

Appellant and Tawana L. met each other in November, 1978 and soon became romantically involved. In May, 1979, Tawana broke off the relationship because she was married and because appellant "was too demanding". At that time, she lived with her family at 3347 Wayne, Kansas City, Missouri.

On November 21, 1979, between the hours of midnight and 2:00 a. m., Tawana was at home sitting in the living room and visiting with her mother when she heard a noise that sounded like a knock at the front door. As she proceeded toward the door, she realized that what she heard were "bullet shots because they rang across the porch and hit the front window." She then escorted her mother to the basement and upon her return upstairs, crawled on the floor, turned off the lights and sat down in a chair for a few minutes. Again, she heard a noise and thinking it was her dog on the porch, she opened the front door and looked north and south. She saw nothing, so she shut the door and returned to the living room. At this point, she noticed an odor of gasoline. She proceeded to the bathroom and looked out the window. (There is a schoolyard adjacent to the house.) At this moment, she observed appellant walking across the schoolyard, carrying a silver gas can in one hand and a rifle or shotgun in his other hand.

At approximately the same time Tawana was observing appellant through the bathroom window, her younger brother emerged from the basement, went to the front door and opened it, discovering "a blaze of fire at the base of the door." The brother began to beat out the fire, when additional shots rang out. The brother continued to fight the blaze with a water hose. As her brother continued to fight the blaze, Tawana looked out a basement window at the rear of the house. She again saw appellant some twenty paces away, shooting the rifle or shotgun. Because the schoolyard was lighted from lights on the school building, and the surrounding area was also lighted by streetlights, Tawana was able to make a definite in-court identification of appellant.

The local fire department was called and the blaze extinguished. At the same time, a fire investigator for the fire department and a member of the police bomb and arson squad were dispatched to the scene.

The fire investigator testified that he arrived on the scene at approximately 2:23 a. m., and that upon his arrival, he observed a one-story wood frame house next to a school. The house had a wooden exterior and had suffered damage to the exterior wall at the southwest corner. This investigator further testified that upon his arrival, the fire was out, but he observed that some ". . . boards were stripped from the house and were laying at the southwest corner of the house and upon examining, I smelled

the odor of gasoline. It had the odor of gasoline in the boards themselves." He further stated that the boards on the side of the house were "heavily charred" as well as the boards lying at the base of the wall. Based upon his investigation, the fire investigator concluded that fire to the house was produced by someone standing at the base of the southwest corner of the home who splashed flammable liquid onto the house and ignited it (the liquid). He stated that the burn pattern began four feet off the ground and proceeded upward seven or eight feet from the ground. The police officer also noted damage to the southwest corner of the house.

The evidence further revealed recovery of a silver-colored gasoline can, along with .30 caliber shell casings and one live .30 caliber cartridge. These items were recovered from the area around the house and the adjacent schoolyard.

The evidence closed with one witness for appellant. This witness testified that she and appellant lived together, and that on November 21, 1979, appellant came home at about 5:15 p. m. and went to be bed shortly after 10:00 p. m. She said she retired about 1:00 a. m., noted that appellant was asleep when she went to bed, and emphasized that he was still asleep in bed when she awoke for work at 4:45 a.m. the next morning. She testified that she woke appellant at 6:00 a. m., and that to her knowledge, he was at home the entire evening on November 21, 1979. She went on to say that appellant did not own any rifle, there were no firearms in their house and they did not possess the gasoline can introduced into evidence.

In his argument before this court, appellant contends that the evidence is insufficient to support a conviction for arson first degree because (a) the meaning of the word *damage* under the statute is the same as the meaning of the word *burning* under the common law, and the state's witness (the fire investigator) testified only that the boards from the house were charred without further explanation; and (b) since the fire observed at the base of the front door

did not damage the front door, then even if one were to assume that the southwest corner of the house was burned, this evidence would not eliminate the possibility that the corner of the house had been burned on a previous occasion.

In support of (a) above, appellant argues that the testimony of the fire investigator (that the residence was "charred") failed to meet the common-law requirement that an actual burning be shown as embodied within § 569.040, RSMo 1978. That statutory section reads as follows:

"569.040. Arson in the first degree.

1. A person commits the crime of arson in the first degree when he knowingly damages a building or inhabitable structure and when any person is then present or in near proximity thereto, by starting a fire or causing an explosion and thereby recklessly places such person in danger of death or serious physical injury.

2. Arson in the first degree is a class B felony."

In the form of attack employed by appellant, the above section has not as yet been construed. A reading of the statute, however, does establish that it contains the traditional requirements which must be met to constitute the offense of arson. Consideration must be given to a definition generally accepted by the courts concerning the word *arson*, and it must be determined whether or not the evidence places the instant case within this definition.

Appellant points out that merely scorching wood black is insufficient to constitute the offense of arson. Appellant relies upon *State v. Witham*, 281 S.W. 32, 34 (Mo.1926), wherein the evidence revealed that the accused had scattered live coals on a carpet and porch floor, resulting in a charring to a depth of one-half inch. Our State Supreme Court, in concluding that the word "charred" was properly included in the court's instruction defining arson, and in quoting Kelley's Crim.Law, § 602, declared:

" 'There must be an actual burning of the property or some part of it; a bare intent, or attempt is not sufficient.

Thus, setting fire to paper or other combustible matter in the house, without burning the house, is not arson. But if any part of the house, however trifling, be burnt, though the fire be afterward extinguished, it is sufficient. Where it was proved that the floor of the room was scorched and charred a very little; that it had been at a "red heat, but not in a blaze," this was held to be a sufficient burning to constitute ·arson. But where the boards of the floor were only "scorched black," but not burnt, and no part of the wood was consumed, this was held not sufficient.' "

Appellant, in his argument, adheres to that portion of *Witham* which states that scorching does not constitute arson. Appellant notes in his argument that the term *char* includes within its definition the term *scorch* as well as the term *burn.* Appellant then concludes therefrom that the testimony employing the term *charring* must be deficient.

Appellant's argument fails for two reasons. First, appellant's conclusion runs directly contrary to the court's conclusion in *Witham* that the word *charred* was properly included within the arson instruction. The court in *Witham,* at 34, found the word *charred* to be "a plain, simple, ordinary word, readily understood by all people of average intelligence, and requires no definition." The court reasoned that this word, in connection with wooden structures, denotes the type of burning envisioned in arson statutes. For additional authority, see *Gonzalez v. People of Virgin Islands,* 109 F.2d 215, 218 (3rd Cir. 1940); *State v. Pisano,* 107 Conn. 630, 141 A. 660 (1928); Curtis, *Law of Arson,* § 82 at 99–101 (1936); and 6A C.J.S. *Arson* § 10 (1975).

Under the common-law requirement of arson, the crux of this issue is that fire be actually communicated to a building. *State v. Lansford,* 594 S.W.2d 617 (Mo.banc 1980). See also 6A C.J.S. *Arson* § 10 (1975) at 226.

For example, say a mattress was set ablaze, resulting in the scorching and discoloration of wallpaper on the wall. Under the common law, this would not constitute arson. See *Honey v. State,* 112 Tex.Cr.R. 439, 17 S.W.2d 50 (1929). If, on the other hand, this fire actually spreads to the wooden structure, arson occurs regardless of how minor the damage. *Lansford* and *Witham, supra.*

■ It can be seen from the above authorities that *charred* is within the common-law definition of arson. This court also concludes that such term is within the meaning and intent of § 569.040. That is, the statute speaks of "damages" and this court construes such term to include the terms *char, charring* and *charred.*

■ It must still be determined whether or not the evidence herein brings the instant case and hence appellant within the meaning and intent of the statute. Appellant centers his argument upon the testimony of the fire investigator and specifically this witness's use of the term *heavily charred.* As earlier noted, this term has been found to be within both the common law and the meaning and intent of the statute. Furthermore, appellant fails to consider additional evidence on the issue of burning. The term *heavily charred* was used by the witness to describe the property at the burned section. This witness, upon cross-examination, also testified that the house was burning when the fire department arrived. In addition, he testified that firemen removed exterior boards from the house to prevent flash fires, thus supporting the inference that the boards were burning or at least smoldering when firemen arrived. He stressed that flammable liquid was splashed on the house and subsequently ignited. This is not a case where the evidence suggests a fire separate from the dwelling which only scorched or discolored the attending structure; rather, the evidence reveals that a flammable liquid was directly applied to the exterior of the house and the house set afire. The evidence shows that the exterior was *heavily charred,* thus sufficiently establishing a burning under both the common-law definition of arson and the meaning and intent of the statute. Under the facts and circumstances of the instant case, it was not error

for the court to overrule appellant's motion for acquittal at the close of the evidence. Appellant's point (1)(a) is found to be without merit and is ruled against him.

In the final phase of his argument, appellant argues that even though the fire was observed at the base of the front door, the fire did no damage to the door. Assuming that the southwest corner of the house was burned, such evidence did not eliminate the possibility that the corner of the house had been burned on a previous occasion.

Appellant argues that there was a lack of direct evidence to indicate that the burning or damage occurred on November 21, 1979 and that the circumstantial evidence was insufficient. Appellant contends that even though Tawana testified she saw flames at the front door of the house, this was not direct proof of arson since there was no evidence of damage to the front door and no path of incineration from the door to the charred southwest corner of the house. Appellant supports his argument with reference to state's exhibit no. 2. This court has carefully examined exhibit no. 2 (a photo of the premises) and while it is perhaps questionable that there was any direct incendiary path, this court observes that the door and the southwest corner of the house were separated by only 2–3 feet in distance.

■ Even if there were a lack of direct evidence on this point, was the circumstantial evidence sufficient to submit the issue to the jury and thus support the trial court's overruling of appellant's motion for acquittal? As to circumstantial evidence, certain principles have evolved which must be followed. When prosecution rests upon circumstantial evidence, the facts and hypothesis must be consistent with each other and with the hypothesis of the guilt and of the accused, and both must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. *State v. Biddle*, 599 S.W.2d 182, 192 (Mo.banc 1980); *State v. Franco*, 544 S.W.2d 533, 534 (Mo.banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). This principle, when applied, is tempered by the principle that the mere existence of other possible hypotheses is insufficient to remove a case from the jury. *State v. Newman*, 605 S.W.2d 781 (Mo.1980); *State v. Thomas*, 452 S.W.2d 160 (Mo.1970).

When the sufficiency of the evidence is challenged on appellate review, the reviewing court accepts as true all evidence tending to prove the defendant's guilt, whether such evidence is direct or circumstantial in nature, together with all favorable inferences drawn therefrom, and disregards all contrary evidence and inferences. *State v. Johnson*, 457 S.W.2d 795 (Mo.1970); *State v. Gales*, 507 S.W.2d 35 (Mo.App.1974).

■ In light of these foregoing principles, this court has reviewed the evidence in the instant case. This evidence consisted of testimony by the fire inspector, who stated on cross-examination that the house was on fire at the time of the arrival of the firemen. He also testified that fireman pulled some charred exterior boards from the house to prevent a rekindling or reignition of the fire, that the exterior boards smelled of gasoline and that the fire to the exterior of the house had been started by someone splashing a flammable liquid on the house and then igniting it. In addition, Tawana testified that the flames at the door were no more than three feet from the damaged exterior of the house at the southwest corner.

It cannot be said such evidence does not exclude every reasonable hypothesis that the fire damage at the southwest corner occurred at some other time than the evening of November 21, 1979 as contended by appellant. Additionally, it cannot be said that the evidence concerning the fact that appellant was observed with a gasoline can and a rifle or shotgun, in addition to other such evidence, is inconsistent with facts and hypothesis of appellant's guilt. Appellant's contention that firemen pulled charred boards from the house because they found no flames and hence decided to search for a "substructural" fire is in no way supported by any evidence upon the record.

The evidence herein and reasonable inferences to be drawn therefrom were more

than sufficient to submit the issue to the jury, because this evidence established a burning which took place on November 21, 1979. It was not error for the court to have overruled appellant's motion for acquittal. Point (1)(b) is found to be without merit and is ruled against appellant.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.