**STATE of Missouri, Respondent,**

v.

**Edward PARTON, Appellant.**

No. 57085.

Supreme Court of Missouri, Division No. 2.

Dec. 11, 1972.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Gilbert P. Strelinger, St. Louis, for appellant.

MORGAN, Presiding Judge.

Charged as an habitual criminal with three prior offenses, Section 556.280, RSMo 1969, V.A.M.S., defendant was tried to a jury and found guilty of statutory rape. The trial court assessed punishment at fifty years confinement, Section 559.260, V.A.M.S., and defendant has appealed.

The victim was six years of age at the time of the incident in question and seven at the time of trial. Her mother had three children, and "off and on" defendant had lived with the family. On July 25, 1970, a baby-sitter was watching the children when she noticed Karen, the victim, was absent

from a group of children playing in the yard. She went to the house and defendant met her but said he had not seen Karen. The baby-sitter then called the mother and the police. Defendant later told the baby-sitter and a policeman that he had found Karen, she was in the house and he would punish her. Shortly thereafter, the baby-sitter returned to the house to get Karen and found her to be bruised about the mouth and without underwear. Karen told of acts committed on her by defendant which are legally classified as rape, fellatio and sodomy. The evidence met the demands of Section 546.330, V.A.M.S. Later the police were recalled and the mother arrived. She gave the police bedsheets and items of underwear which appeared to be soiled. Tests on these items revealed blood and seminal stains, and a doctor stated the child had sustained substantial injury to the genital area. Prior to the mother's arrival, defendant had driven from the house and was arrested later in the day while hiding in the rear of a tavern. He testified that he did "smack" the child in the mouth because she had run away but denied any sexual acts took place.

▉ First, it is asserted that the trial court erred in finding Karen to be a competent witness and permitting her to testify over defendant's objection in violation of Section 491.060(2), V.A.M.S. As was said in State v. Starks, Mo., 472 S.W.2d 407: "The problem posed is not one of first impression as it has been the subject of numerous decisions by the appellate courts of this state. Mo.Dig., Witnesses, ▉ ▉ All of such cases make it obvious that the ultimate objective is to protect an accused from testimony by a child of tender years who may have lacked the mental capacity to observe an event and later truthfully and accurately relate what, in fact, was observed. The relevant statutory provision provides, in part, that: 'The following persons shall be incompetent to testify: * * * A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly * * *.' Section 491.060(2). This statutory standard was made somewhat more definitive in Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W.2d 858, 862, wherein a witness 8 years, 6 months and 20 days old was found competent to testify and relate events observed while he was 5 years, 6 months and 9 days old. The case involved personal injuries suffered by the child witness and, among other factors, the court observed that '. . . [the] evidence was about a subject that would naturally leave an impression upon his memory of a much more lasting character than if it were something that he merely saw or observed.' Both the refined standard adopted in Burnam, and the logic of the reasoning that a victim of the events in question would probably have a more lasting impression of such events, have been accepted and applied in criminal cases. For instance, in State v. Jones, Mo., supra, 360 Mo. 723, 230 S.W.2d 678, at l.c. 680–681, this court quoted with approval from Burnam that: ' "The test of competency of a child of tender years involves four fundamental elements, all of which should be present in order for such child to be competent to testify, viz.: '(1) Present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation.' 5 Jones' Commentaries on Evidence, § 2106, p. 3954." Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W.2d 858, loc. cit. 862.' State v. Statler, Mo., 331 S.W.2d 526, 528. See also Hildreth v. Key, Mo.App., 341 S.W.2d 601, wherein the implications of each of the four elements listed were exhaustively explored as were related cases on the general subject. The latter case involved tes-

timony by a witness of facts observed while 4 years and 7 months of age.

"From all of which, it is clear that each case must be considered in light of the facts presented for the reason '. . . there is no precise age at which children are competent or incompetent. Their competency is to be determined by their apparent capacity. It belongs to the judge in each case to determine by appropriate questions the competency of the infant offered as a witness, and his decision is not open to review unless there be a clear abuse of judicial discretion . . ..' State v. Headley, 224 Mo. 177, 123 S.W. 577, 581; State v. Nelson, 132 Mo. 184, 33 S.W. 809, 812."

■ As to this case, Karen testified as to her age, ability to count, place of residence, relatives, days of the week and her school work both at pre-trial hearing and at the trial. From the record presented, it appears that the witness was alert and intelligent and met the standards heretofore noted. The two cases relied on by defendant—State v. Jackson, 318 Mo. 1149, 2 S. W.2d 758 and State v. Jones, 360 Mo. 723, 230 S.W.2d 678—are clearly distinguishable. In Jackson the child was found to be appallingly ignorant, and in Jones the testimony of the child-witness was found to be totally inconsistent with the physical facts shown.

■ Second, defendant contends that his cross-examination of the mother, a state's witness, was unduly restricted. When inquiry was made as to whether or not she had ever used drugs, she answered yes. The court then sustained the state's objection to further questions in this connection. It is now argued that, "the jury was entitled to know the extent of her use so that they might make a decision as to whether she in fact was a competent witness." The relevant state of the law on the subject may be found in 52 A.L.R.2d

848, 849, wherein it is said: "Although the authorities are somewhat conflicting, the rule supported by the majority of the cases seems to be that for the purpose of discrediting a witness, evidence is not admissible to show that he is a user of opium, morphine, or similar drugs, or to show the effect of the use of such drugs, unless it is proven that the witness was under their influence at the time of the occurrences as to which he testifies, or at the time of the trial, or that his mind or memory or powers of observation were affected by the habit." State v. Pflugradt, Mo.App., 463 S.W.2d 566, 570[2]; State v. Booth, Mo., 423 S.W.2d 820, 823. However, the record in this case does not call for further consideration of the general problem. The mother was working as a waitress at the time of the acts complained of, she was not a witness to the alleged crime and her testimony was not vital to the state's case. There is nothing in the record to demonstrate that she was at the time under the influence of drugs, nor that defendant could have established the same. Had it been possible, the result would have been merely to establish a collateral fact which would not have tended to disprove the state's case. "The extent of cross-examination on collateral matters for the purpose of impeachment is largely within the trial court's discretion and no abuse of such discretion has been made apparent in this instance." State v. Cox, Mo., 352 S. W.2d 665, 673[24, 25].

■ Third, it is argued that the trial court should have instructed the jury on the law of common assault. As said in State v. Bird, 358 Mo. 284, 214 S.W.2d 38, 39[4]: "The evidence showed that if any assault was committed, the purpose of the assault was rape and that it was consummated. Therefore, if any offense was committed it was rape, so that an instruction on common assault would have been improper." State v. Berry, 361 Mo. 904, 237 S.W.2d 91, 93; State v. Chandler, Mo.,

314 S.W.2d 897, 901; State v. Crossman, Mo., 464 S.W.2d 36, 43; State v. Leigh, Mo., 466 S.W.2d 685, 686. Under the evidence presented, we rule this point against defendant.

Fourth, alleged error is premised on the showing of crimes other than that for which defendant was on trial, i.e., fellatio and sodomy. The argument has no merit. It is clear from the testimony given that the totality of acts performed by defendant on Karen were of a continuous nature so as to be inseparable in fact. "In such case 'the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which (the accused) is not on trial, when it forms a part of the res gestae of the crime charged.'" State v. Shumate, Mo., 478 S.W.2d 328, 330; State v. Lee, Mo., 404 S.W.2d 740, 751; State v. King, 342 Mo. 975, 119 S.W.2d 277, 283.

Lastly, defendant contends that his motion to suppress any evidence relative to the bedsheets and other items should have been sustained. The state submits that the issue is not before the court for the reason no timely motion to suppress was filed; (State v. Carey, Mo., 411 S.W.2d 243; State v. Harrington, Mo., 435 S.W.2d 318; State v. Fields, Mo., 442 S.W.2d 30, 33); that there was no "search" in a constitutional sense (Deckard v. State, Mo., 456 S.W.2d 35, 37); and, that the items taken were with "permission to take everything" as expressed by the mother (State v. Blackwell, Mo., 459 S.W.2d 268, 271). The law is consistent with the state's position. On the point at issue, the facts here are analogous to those found in Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, wherein the United States Supreme Court denied the arguments of defendant.

Finding no reversible error, the judgment is affirmed.

All of the Judges concur.