**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Carroll Leroy RAINWATER,
Defendant-Appellant.**

**No. 11465.**

Missouri Court of Appeals,
Southern District,
Division One.

July 10, 1980.

John D. Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Darrell Deputy, Jr., Lebanon, for defendant-appellant.

TITUS, Presiding Judge.

On November 20, 1978, a Laclede County jury returned a verdict finding defendant guilty of second degree murder in the killing of his wife. § 565.004 RSMo 1978 (formerly § 559.020) and § 565.008 RSMo 1978. He was sentenced to imprisonment for a term of 18 years. On the same date the court, inter alia, made the following docket entry: "Defendant allowed 30 additional days to file Motion for New Trial *for a total of 45 days to file Motion For New Trial.*" (Emphasis supplied). This was error, as then Rule 27.20(a), V.A.M.R., in part, stated: ". . . Such motion [for a new trial] shall be filed . . . within ten days after the return of the verdict: Provided, on application of defendant, the court may extend the time for filing such motion for an additional period of thirty (30) days: Provided further, the court shall have no power to make another or further extension of the time for filing said motion." In computing the maximum allowable time under Rule 27.20(a), i. e., 40 days, for filing a motion for a new trial in accordance with former Rule 31.01, in force at the time herein concerned, we ascertain the last day to be reckoned was December 30, 1978. An appellate court takes judicial notice of the calendar and the date on which a particular day of the week falls. *Hagen v. Perryville Bd. of Aldermen*, 550 S.W.2d 797, 798–799[1] (Mo.App.1977). Therefore, we observe that December 30, 1978, fell on a Saturday which was an includable day under former Rule 31.01. We calculate, therefore, the motion for a new trial should have been filed no later than December 30, 1978. The motion for a new trial in this case was not filed until January 3, 1979, or four days too late. Thus, the motion preserved nothing for appellate review and our consideration of the cause on appeal is relegated to issues deemed plain error under Rules 29.-12(b) [substantially the same as prior Rule 27.20(c)], and 30.20, V.A.M.R. [1975–1979 Supp.]. *State v. Richardson*, 519 S.W.2d 15, 16[1] (Mo.1975); *State v. Gant*, 586 S.W.2d 755, 758–759[1] (Mo.App.1979).

The evidence disclosed that after a day of revelry, which included the copious consumption of beer by defendant and his wife, defendant appeared at a neighbor's house near 9 p. m. October 5, 1977. He was covered with blood, crying hysterically with the announcement that he had just shot his wife.[1] Although defendant at trial disclaimed any recollection of the events, the authorities, who were summoned because of the shooting, testified that upon arrival at defendant's house defendant was variously muttering that he had killed his wife, that he merely intended to hit her with the gun "to teach her a lesson", and that she "grabbed" or "deflected" the gun causing it to discharge. The fatal shot, fired at a close range, had blown away the top portion of the wife's skull.

Numerous photographs of the wife's body were taken at the situs of the charged crime. Defendant's "Motion in Limine to Estop the State from Offering Certain Photographs of the Deceased" was sustained except as to State's Exhibit No. 1. The prosecutor was directed by the court to show the picture to the jury "as a group [while] standing three feet back from the jury railing." Exhibit No. 1, displayed collectively to the jury as instructed by the court, shows the dead wife sitting sidewise in a chair at the kitchen table with her right arm wrapped around the back of the

1. An analysis of defendant's blood and that of his deceased wife disclosed defendant had a blood alcohol level of eighteen-hundredths of one percent and that the dead wife's level was nineteen-hundredths of one percent. Under § 577.030(3), RSMo 1978, this was prima facie evidence that both were intoxicated.

chair and her left arm in a relaxed position between her jean-clad legs. It also depicts an upright beer can, a bowl, a sandwich and a package of cigarettes atop the table.

In his jury-argument, defendant's counsel alluded to the fact that no autopsy had been undertaken to determine the true cause of death and to defendant's contentions to the investigating officers that the gun had discharged as the result of a scuffle between defendant and decedent. The state prosecutor thereafter, in his concluding argument, displayed Exhibit No. 1 to the jury, accompanied with the assertion that an autopsy had obviously been unnecessary to prove the cause of death and that the pictorial evidence belied the claim that a scuffle had preceded the shooting. Defendant's lawyer objected to showing the jury the picture "all this much." The trial court, out of the jury's hearing, admonished the prosecuting attorney "not to exhibit [the picture] anymore", sustained the defense objection but denied defendant a mistrial.

■ In point relied on I in defendant's brief on appeal, he asserts the trial court erred in permitting the state, in the first place, to display Exhibit No. 1 to the jury because it was "gruesome, inflammatory and prejudicial" and was "neither necessary nor material in that it offered no proof of any issue in the case." Point relied on II claims the court erred in failing to declare a mistrial when the prosecutor, in final argument, again displayed Exhibit No. 1 to the jury because its continued exhibition "served to inflame and prejudice the jury against the Defendant." As written, these points relied on violate the mandatory requirements of Rule 30.06(d), V.A.M.R. [1975–1979 Supp.], in that they do not undertake to state "wherein and why" Exhibit No. 1 was "gruesome, inflammatory and prejudicial", was "neither necessary nor material" or that "it offered no proof of any issue." Likewise, we are left to guess "wherein and why" defendant is claiming the display of the exhibit to the jury in final argument "served to inflame and prejudice the jury" if, in fact, it did. *State v.*

*Davis*, 556 S.W.2d 745, 747–748[7] (Mo.App. 1977); *State v. Ladd*, 552 S.W.2d 23[1] (Mo. App.1977); *State v. Purvis*, 525 S.W.2d 590, 593[5] (Mo.App.1975). No duty is owed an appellant by a reviewing court to seek through the transcript on appeal or the argument portion of appellant's brief to come by "wherein and why" the action or ruling of the trial court is allegedly erroneous, and an appellant's points relied on which cannot be comprehended from reference to the points alone preserve nothing for review on appeal. *State v. McClain*, 541 S.W.2d 351, 354[7] (Mo.App.1976); *State v. Hollins*, 533 S.W.2d 231, 234[8] (Mo.App. 1975).

■ Although points I and II were not properly presented and preserved for our review, we note, as to point I, that a trial court has wide discretion to admit vel non the photograph of a dead body as an exhibit. *State v. Jones*, 571 S.W.2d 741, 747[12] (Mo.App.1978). Even though "gruesome," a picture may be admitted when it sheds light on a material matter in issue, when it tends to connect defendant with the crime, when it shows the position of the body and the nature and location of the fatal wound, or when it corroborates the testimony of witnesses or refutes a defense unless its prejudicial effect is so great as to outweigh any possible probative value. *State v. Laptad*, 585 S.W.2d 263, 265 (Mo.App.1979); *State v. Dodson*, 556 S.W.2d 938, 947[14] (Mo.App.1977). Also, such a photograph is not inadmissible simply because the content thereof is described by other evidence, if it aids the jury to better understand the facts and issues. *State v. Sempsrott*, 587 S.W.2d 630, 634[3] (Mo.App.1979).

■ As the second paragraph of this opinion narrates, defendant recounted to the investigating officials that his wife, by physical action, undertook to grab or deflect the gun he intended only as a chastening bludgeon and that, as a result of his wife's defensive activities, the weapon discharged accidentally. Exhibit No. 1 depicts the wife seated in a chair with her right arm around the back thereof in an apparent relaxed position, her left arm in a reposing position

on the seat of the chair between her legs. She was seated near a table whose surface contents seem undisturbed by any evident exertions to seize or turn aside a weapon being employed for nonfatal corporal punishment. The exhibit not only depicts the wife's apparent lackadaisical indifference to any threats of physical harm but tends to negate any activities on her part which would have caused an accidental discharge of the weapon. The photograph lends corroboration to material matters in issue and would serve to aid the jury in better understanding the oral testimony regarding the facts and circumstances surrounding the event. We find no error, plain or otherwise, in the admission into evidence of Exhibit No. 1.

In considering the substance of defendant's point relied on II, we have recast in the third paragraph of this opinion the basis for defendant's claim of error anent the prosecutor's display of Exhibit No. 1 to the jury in his concluding argument. Without repeating what has already been said, it is to be recalled that prosecutors are permitted a wide berth in replying to defense arguments designed to discredit the state's case in the eyes of the jury. *State v. Stamps*, 569 S.W.2d 762, 769[18] (Mo.App.1978). Considering that defendant's lawyer was urging the jury to believe the state had not had an autopsy performed to determine the true cause of death and that if the gun produced in evidence caused the death its discharge was the result of decedent's grappling therewith, it becomes apparent that when the state displayed the exhibit in its concluding argument, coupled with the urging that the cause of death was made patent by the picture and that the exhibit belied the claim of a scuffle for the gun, it is clear that the argument and the picture shown was retaliatory in nature and invited by defense counsel's argument. Trial courts possess considerable discretion in permitting retaliatory arguments and in refusing to declare mistrials based thereon. *State v. Taylor*, 567 S.W.2d 705, 709[6] (Mo.

App.1978). The trial court's prompt action in limiting the prosecutor's use of the picture in retaliatory argument, and in not declaring a mistrial, demonstrated a wise and proper employment of its discretion in the matter. We find no error, plain or otherwise, as to point relied on II.

In toto, defendant's last point relied on III states: "The Court erred in giving instruction number 10 which stated that voluntary intoxication is not a defense in a commission of any crime and that the giving of said instruction was prejudicial so as to improperly consider the issue of intoxication." This point nowhere attempts to demonstrate "wherein and why" it was error to give the instruction or, if it was error, "wherein and why" the giving thereof was prejudicial. The point is too general to present anything for appellate review. *State v. Pauley*, 515 S.W.2d 824, 825[3] (Mo. App.1974). Nevertheless, it suffices here to note that the giving of instruction 10 was not error, plain or otherwise. Prior to the adoption of the new criminal code effective January 1, 1979 (see § 562.076 RSMo 1978), an instruction that voluntary intoxication is not a defense is properly given when the testimony indicates, as here, the defendant had been drinking heavily and was intoxicated at the time the crime was committed. *State v. Street*, 498 S.W.2d 523, 524[1] (Mo. 1973); *State v. Grey*, 525 S.W.2d 367, 370[7] (Mo.App.1975).

We have examined the information, verdict, judgment and sentence and find them sufficient. Rule 30.20, V.A.M.R. The judgment is affirmed.

FLANIGAN, C. J., and GREENE and PREWITT, JJ., concur.