STATE of Missouri,
Plaintiff-Respondent,

v.

Roy Eugene WARD,
Defendant-Appellant.

No. 42588.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 11, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Robert M. Paskal, Clayton, Howard E. McNier, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Lew A. Kollias, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Defendant was convicted by a jury of murder in the second degree and sentenced to a term of sixty years imprisonment. On this appeal defendant contends that the court erred (1) in proceeding to trial in defendant's absence; (2) in admitting into evidence photographs which were inflammatory and had no probative value; and (3) in failing to sustain defendant's motions for directed verdict because the evidence was insufficient to prove the crime alleged. Defendant also asks us to consider as plain error the admission of rebuttal evidence as to defendant's character and improper comments of the State in closing argument.

We consider first defendant's challenge to the sufficiency of the evidence to sustain the conviction. In doing so we review the evidence in the light most favorable to the State. We accept as true all evidence tending to prove defendant's guilt together with all reasonable inferences to be drawn therefrom and disregard all evidence and inferences to the contrary. *State v. Dunn*, 615 S.W.2d 543 (Mo.App.1981).

On the evening of Friday, May 18, 1979, defendant and Tim McBain went to visit a friend of McBain's. McBain bought a bag of marijuana from his friend and they drank some beers and smoked marijuana. At about 10:45 the two went to a lounge in the north part of the City of St. Louis. They drank more beer and went out behind the lounge and smoked more marijuana. During the evening defendant became acquainted with Janice Gunter and near closing time he asked McBain if he would drive Janice home. Janice had a girl friend, Nancy, whom they wanted to accompany them but Nancy's step-father came to the lounge and took her home. McBain, defendant and Janice rode out to Nancy's home in McBain's car and tried unsuccessfully to convince her parents to let her go with them.

The three then went to Janice's apartment. She invited them in for a beer but the beer was warm so Janice and defendant went to an all-night filling station to purchase some ice and attempt to call Nancy. A neighbor of Janice, Don Theis, saw them at the filling station. After buying ice, Janice and defendant went back to the apartment. About 15 minutes later Janice came back to the filling station. She tried to sell some marijuana to some of the men who were there. When she could find no buyers she shared several joints with the persons at the station. Defendant came in a short time later and the two left the filling station and returned to the apartment. When they got back it was about 3:30 AM on Saturday morning. McBain said that he wanted to leave. Defendant told McBain to go and that he would hitchhike or take a bus home. McBain then left.

Don Theis who had seen defendant with Janice on two occasions at the filling station, had his van parked in a lot adjacent to the rear of Janice's apartment building. He was working on the "CB" radio in his van at about 6:00 or 6:30 AM when he heard the rear door to Janice's apartment slam. He looked up to see defendant come from the direction of Janice's apartment and run down the street.

That evening Janice's body was found by a man with whom she was to have had a date. Janice had been severely beaten and strangled. The cause of death was strangulation.

On the Monday following Janice's death, defendant saw McBain and said that he was going to quit drinking. On Tuesday, defendant asked McBain if he had seen any police around. On Wednesday defendant again asked about police and told McBain that he had killed Janice. The following evening defendant again visited McBain. He started to leave by the front door but came back and said there were police officers in front of the house. He then went in the direction of the back door. He was apprehended later that evening. When apprehended he had shaven the mustache and goatee he had been wearing when he fled from the police at the McBain house. He also had recent scratches on his back and arm.

Defendant, who testified on his own behalf, corroborated most of the State's evidence but insisted that he had left Janice's apartment with McBain. He also testified that his dog had caused the scratches to his back and arms.

■ Defendant's primary attack under this point is that the case was one of circumstantial evidence with a showing of mere presence of defendant at the scene and the opportunity for him to commit the crime. We agree with all of the cases cited by defendant on the law with respect to circumstantial evidence but none are apposite or need to be discussed here. The testimony of McBain that defendant admitted to the killing is direct evidence that defendant committed the crime of which he is charged. The credibility of McBain was for the jury to determine. There was sufficient substantial evidence to support the judgment. *State v. Amos,* 553 S.W.2d 700, 701 (Mo. banc 1977), reversed and remanded on other grounds.

Defendant's next point relied on reads as follows:

"That the Trial Court allowed into evidence certain photographs which were inflammatory in nature and, hence, prejudiced the jury whereas said photographs had no probative value as evidence."

■ There were some twenty-four photographs introduced in evidence but defendant's point fails to identify any specific photographs which he contends are objectional and why they are objectionable. The point fails to preserve anything for review. Rule 30.06(d); *State v. Rainwater,* 602 S.W.2d 233, 236 (Mo.App.1980).

■ We have nevertheless reviewed all of the photographs and find that they depict scenes of the exterior of Janice's apartment, of the interior of the apartment, the scene of the crime showing the position in which the body was found. These photographs corroborate the testimony of those who came upon the scene. Other photographs show the body in different positions so as to display the injuries received by the deceased. Photographs taken at the autopsy were used by the pathologist in explaining the nature of the injuries and the cause of death. The photographs that were admitted into evidence corroborate, explain and clarify the testimony of the various witnesses. The trial court did not abuse its discretion in admitting the photographs. *State v. Barnhart,* 587 S.W.2d 308, 311 (Mo. App.1979); *State v. Sempsrott,* 587 S.W.2d 630, 634 (Mo.App.1979).

Defendant next contends that the court abused its discretion in proceeding with a portion of the trial without the defendant being present.

■ The Missouri Constitution confers upon the accused "the right to appear and defend, in person and by counsel; . . . [and]

to meet the witnesses against him face to face; ...." Mo.Const. of 1945, Art. I, § 18(a) (1970). This coveted constitutional right may be waived, however, by the voluntary acts of the defendant. *State v. Cheeks*, 604 S.W.2d 30 (Mo.App.1980). See also the lucid detailed discussion in *State v. Warren*, 579 S.W.2d 723 (Mo.App.1979).

The basis of defendant's contention arises out of defendant's failure to appear on the third day of the trial. When the court arrived defense counsel notified the court that the defendant was not present. The court contacted the defendant's bondsman who was not aware of defendant's whereabouts. In a conference with defendant's father, the court learned that defendant had spent the night with his girlfriend and was informed by her that defendant left sometime before 7:00 AM. At 10:10 AM the court announced that it would wait until at least 10:30 AM to give the bondsman, counsel and defendant's family an opportunity to locate defendant. When defendant did not appear at 11:02 AM and no one could account for defendant's absence the court declared a bond forfeiture and made the finding that the defendant had voluntarily absented himself. The trial was resumed at 11:07 AM in the absence of defendant. The court took its noon recess at 12:49 PM and made note of the fact that defendant had not made an appearance. The court announced that it would reconvene at 2:15 PM. At 2:55 PM the court announced that defendant had appeared in court some 15 to 20 minutes earlier with the bondsman.

■ The defendant advised the court that he became scared when the pictures were shown to the jury and because of "the looks [he] got from them." He "thought he was getting a raw deal and ... [he] just had to take off." The bondsman had contacted his girl friend who located defendant and he thought he should come back.

The trial court could have reached no other conclusion than that the absence of defendant was voluntary. Defendant waived his right to be present in person for the period of time that he was absent. *State v. Warren, supra.*

Defendant contends that the trial court erred in allowing the State to present rebuttal testimony with respect to defendant's character and reputation by way of evidence of specific acts of misbehavior and lawlessness.

■ Defendant acknowledges that the issue was not preserved for our review because no objection was made to rebuttal testimony at the trial and the issue was not presented to the trial court in the motion for new trial. He urges us to consider the issue as plain error.

■ We have the discretion to consider plain errors affecting substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 29.12(b). This rule is not to be routinely invoked; it is the ultimate repository of our power to correct injustice. We have reviewed the issue and read the transcript. No injustice was perpetrated by the admission of the rebuttal testimony. In fact the situation here closely parallels that which was approved in *State v. Payton*, 559 S.W.2d 551 (Mo.App.1977).

■ Defendant also urges that we consider certain portions of the final argument of the State as plain error. We find that no manifest injustice has resulted from the argument. It would serve no purpose to set out the argument in this opinion. We might add that trial counsel would have had no basis for objecting to the argument because it is within the bounds delineated in *State v. Haynes*, 528 S.W.2d 11 (Mo.App. 1975).

The judgment of the trial court is affirmed.

STEPHAN, P. J., and DOWD, J., concur.