**STATE of Missouri, Respondent,**

v.

**Randy GRADY, Appellant.**

**No. 43636.**

Missouri Court of Appeals,
Eastern District, Division One.

March 15, 1983.

Joseph W. Downey, Public Defender, Richard Burke, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

STEPHAN, Judge.

Defendant appeals from a jury conviction of sodomy, § 566.060, RSMo 1978. Defendant was sentenced in accordance with the verdict to a period of five years. We affirm.

Anthony R_____, a child of nine years at the time of the incident, was the victim of the sexual assault. Anthony testified that while he was waiting for his cousin at about 6:30 p.m., on January 18, 1980, outside a grocery store, a man grabbed him by the neck and forced him to walk to nearby Lafayette Park. Anthony stated that when they reached the park, defendant took him to an old house and attempted, without success, to open the door. Anthony testified that he saw defendant's face, when they passed a light on a gate near the old house. Defendant forced Anthony to the ground under a bridge in the park, took Anthony's pants off, and made him lie on his stomach. Anthony testified that at that point he heard defendant unzip his own pants and that defendant put his penis into Anthony's anus. After defendant completed the act and walked away, Anthony put his clothes on and ran. Anthony proceeded to his aunt's house, where his mother was visiting. His mother noted that he was behaving unusually and was in an extremely agitated state. She took him home where he explained what had happened, and she took him to City Hospital. The medical examination conducted there showed rectal bleeding. A police artist thereafter talked with Anthony and drew a sketch based on Anthony's description of his assailant. After viewing several lineups, Anthony identified Grady in a lineup and at trial as the person who sodomized him. Defendant maintained that he was home on the evening of the incident until 7:20 p.m., when he left for a downtown St. Louis nightspot.

Defendant's first point is that the trial court abused its discretion in permitting Anthony to testify because "he lacked mental capacity at the time of the occurrence to truly observe and to register such occurrence" and "insufficient memory" to recount the event at trial. Anthony was nine at the time of the incident and ten when the trial took place. Defendant's starting point for this argument is § 491.-060, RSMo 1978, which provides in part: "The following persons shall be incompetent to testify: ... (2) A child under ten

years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly; . . ." From the wording of the statute itself it is obvious that mere lack of the mentioned age does not, ipso facto, disqualify a child from testifying, but calls for a judicial determination of the child's abilities to observe and thereafter relate his experiences accurately. *State v. Parton*, 487 S.W.2d 523, 526 (Mo.1972). In reviewing the sufficiency and results of that determination, we may look to the preliminary examination of the child by the trial court as well as the child's trial testimony. *State v. Stewart*, 596 S.W.2d 758, 759 (Mo.App.1980).

 We have examined the transcript of the pre-trial hearing in which Anthony's testimonial competency was probed by the prosecuting attorney, defense counsel, and the trial court. We have likewise read the child's testimony at trial and have concluded that there was no abuse of discretion involved in permitting him to testify. Without setting forth Anthony's testimony verbatim, suffice it to say that he demonstrated a clear and coherent recollection of the occurrence, an awareness of the gravity of the matter, and his obligation to tell the truth. Whether we measure the rebuttable presumption created by statute concerning the testimonial incompetency of a child under ten from the time of the occurrence or at trial, we are satisfied that Anthony met the requirements enunciated in cases involving testimony of children and § 491.-060, supra. That is to say, he showed: (1) present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity to observe and register the occurrence at the time; (3) sufficient memory to retain independent recollection of his observations; and (4) capacity to articulate that memory. *State v. Young*, 477 S.W.2d 114, 116 (Mo. 1972); *State v. Hastings*, 477 S.W.2d 108, 111 (Mo.1972); *State v. Robertson*, 480 S.W.2d 845, 846–847 (Mo.1972).

 Further, in a case of this nature, it is appropriate that we note the relatively brief time lapse between the crime and the trial, eight months, as well as the traumatic nature of the act committed upon him, which "would leave a lasting impression on the child." *State v. Armoneit*, 588 S.W.2d 24, 27 (Mo.App.1979). A large measure of deference is also owed to the learned trial judge who had the benefit of personal observation of Anthony while the boy was testifying. *State v. Singh*, 586 S.W.2d 410, 416–417 (Mo.App.1979). The trial court did not abuse its discretion in allowing Anthony to testify.

Defendant's next point is that the trial court erred in sustaining the state's challenge of a venireman for cause, after the venireman expressed doubt as to the ability of a ten year old witness to remember an incident that happened nine months prior to trial. Defendant claims that such exclusion deprived him of a qualified panel from which to select a jury. Venireman Book responded in the following way to questions during voir dire:

MR. AUTRIE [Prosecutor]: Is there anything about the fact that Mrs. Book is a school teacher that would affect you or that would prevent you from being a fair and impartial juror in this case?

VENIREMAN BOOK: The only reservation I have—not with her being a school teacher, but I don't know if a ten-year-old child, something happens a year ago or nine months ago, I would have a hard time with him being able to remember stuff, what happened.

\* \* \* \* \* \*

THE COURT: Sir, do you feel that you could listen to the evidence as presented and give both sides a fair trial?

VENIREMAN BOOK: No, I don't think I could.

MR. BURKE [Defense Counsel]: May I ask further questions?

THE COURT: Go ahead.

MR. BURKE: Sir, do you feel your belief that children—a child may be unable to remember something is why you're saying you can't give the state a fair trial?

VENIREMAN BOOK: Yes, sir, that is why.

MR. BURKE: I don't think that is cause. He is certainly entitled to that. I don't think it makes him unfair.

MR. AUTRIE: Can I ask a further question, your Honor?

Mr. Book, are you saying that based on your experience you have a preconceived idea of the ability of kids to remember and that would affect even judging the testimony in this case?

VENIREMAN BOOK: The experience I have had with children that age, yes, like I said.

THE COURT: That is what he is asking, whether you have any preconceived ideas before you hear anything.

VENIREMAN BOOK: Yes, I do.

The defendant contends that Mr. Book's response did not reflect a preconceived opinion about Anthony's reliability, but merely a doubt in general as to the reliability of children that age. We find that the trial judge acted properly in determining that Mr. Book was an incompetent juror.

■■■ Mr. Book's expression of his opinion that he did not think he could give the state a fair trial because of his inability to give credence to the word of a ten year old child provided ample grounds for the trial court, in the exercise of its discretion, to sustain the state's challenge. "The trial court has broad discretion in determining the competence of jurors and should not hesitate to strike a juror for cause when there is an indication of partiality toward either party or preconceived prejudices." *State v. Neal,* 591 S.W.2d 178, 182 (Mo.App. 1979). See also *State v. Williams,* 538 S.W.2d 947, 949 (Mo.App.1976). It is fundamental in a criminal case that the state, as well as the defendant, is entitled to a fair trial by impartial jurors. The trial court's efforts to secure this right to both parties should be disturbed only upon a compelling showing that its discretion was abused. Defendant has made no such showing here.

On a third point of error, defendant asserts that the trial court erred in overruling defendant's motion to suppress identification, allowing into evidence Anthony's identification of defendant. The essence of the complaint is that defendant was wearing the same clothes in the lineup as were worn by the assailant at the time of the incident. According to defendant, the resemblance of clothing coupled with limited opportunity of Anthony to view his assailant's face for more than a few seconds resulted in an impermissibly suggestive identification procedure. Defendant's pre-trial motion to suppress and his objection at trial to the identification were properly denied.

■■■ As a threshold consideration, we weigh the "totality of the circumstances" to determine whether identification procedures were impermissibly suggestive. *Simmons v. U.S.,* 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). See *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). In so doing, we note first Anthony's opportunity to view his assailant at the time of the crime. At trial, Anthony testified that he saw his attacker's face for "a few seconds" while the two walked under a light in the park. We believe that these conditions were sufficient for the witness "to fix in his mind's eye the appearance of the culprit," so that Anthony would not have been misled even by a suggestive lineup. *State v. Terry,* 582 S.W.2d 337, 340 (Mo.App.1979). Furthermore, the witness' description given to police of his attacker in terms of race, type of clothing, and general build, showed both a capacity to recall the incident and the accuracy of his memory. *State v. Carter,* 572 S.W.2d 430, 435 (Mo. banc 1978).

Furthermore, the fact that defendant appeared in the lineup wearing the same clothes as those described by Anthony after he was attacked does not render the lineup unduly suggestive. Identification did not turn on the articles of clothing worn by defendant. *State v. Arnold,* 528 S.W.2d 164, 166 (Mo.App.1975). The description given to police by Anthony highlighted his assailant's physical features and, indeed,

formed the foundation for the victim's subsequent identification of defendant. *State v. Wells*, 586 S.W.2d 354, 357 (Mo.App.1979). The trial court's denial of the motion to suppress identification, therefore, must be sustained.

Next defendant argues that the trial court erred in overruling defendant's motion in limine with respect to Anthony's testimony on direct examination relating to lineup and photo identifications. On direct examination Anthony testified that he had viewed "five or four" lineups in which defendant was not present and did not identify anyone as his attacker. Ultimately, Anthony disclosed that at the February 29, 1980 lineup, he picked out defendant. Contrary to defendant's assertion in his brief, Anthony did not testify that he had seen "many" photographs of persons other than the defendant. Anthony's only trial testimony relating to a photograph was one of the lineup in which Anthony identified defendant. The defendant admits, as he must, that under Missouri law an unimpeached identifying witness may testify as to extrajudicial identifications of a defendant. *State v. Degraffenreid*, 477 S.W.2d 57, 62 (Mo. banc 1972). "It is not improper bolstering, and it is not hearsay because it is direct testimony as to a fact about which the witness has personal knowledge." *State v. Quinn*, 594 S.W.2d 599, 603 (Mo. banc 1980). The distinction advocated here is of no moment. Anthony's testimony about the process of identifying his attacker after several lineups illustrates the "circumstances of the lineup," which "would serve to aid the jury in assessing the weight to be given to the identification." *State v. Carter*, 557 S.W.2d 47, 51 (Mo.App.1977). Defendant's point is denied.

The defendant's final contention is that the trial court erred in refusing to grant a mistrial following remarks made by the prosecutor during closing argument. Defense counsel objected to the following remarks by the State:

> MR. AUTRIE: You heard Officer Keeler from the stand tell you that when he drew this, when he draws any of these, they're not intended to be exact likenesses; they're general facial characteristics to assist the police in their investigation, to assist the police in finding the person that did this to Anthony . . ., and he told you, and the other officers told you that these sketches were distributed throughout the Third District, and, in fact, Mrs. . . . [Anthony's mother] distributed some of these sketches to her friends. Where do you think they got him from to put him in the line-up?

The defendant objected, claiming the reference to "where he came from for purposes of the lineup" should not be allowed, and asked that the jury be instructed to disregard the remark. The trial judge so instructed the jury.

The thrust of defendant's complaint now is that the reference invited the jury to consider evidence excluded by defendant's motion in limine. The ruling on the motion prohibited testimonial references to other cases pending against defendant and identifications of defendant by persons other than those endorsed by the state in this action.

The trial court enjoys considerable discretion on the propriety of counsel's arguments, and its rulings are disturbed for abuse of discretion only where the argument clearly is unwarranted. *State v. Moore*, 620 S.W.2d 370, 373 (Mo. banc 1981). The remarks by the prosecutor were warranted as a response to defense counsel's numerous comments in argument to the effect that Anthony provided police with a poor description and, consequently, an inaccurate composite was drawn. Defense counsel first raised the issue, and he may not "provoke a reply to his own argument and then assert error." *State v. Kirksey*, 528 S.W.2d 536, 538 (Mo.App.1975). The trial judge acted quickly to restrict the prosecutor's argument, *State v. Rainwater*, 602 S.W.2d 233, 237 (Mo.App.1980), so that, if any hint of prejudice resulted from the remarks, "it was sufficiently removed by the trial court instructing the jury to disregard." *Kirksey*, at 538.

Finally, from our reading of the closing argument, we believe that it is extremely unlikely that the jury could have concluded from the prosecutor's words set out above that he was referring to identifications of the defendant in connection with other crimes by persons who did not testify in this case. Defense counsel's sensitivity to the remotest possibility that the jury could have made such an inference is commendable but, we conclude, unrealistic. The factual issue under attack by defense counsel and being defended by the prosecutor was the similarity of the sketch to defendant's actual appearance, and the jury could not reasonably have understood otherwise. The trial court's instruction to the jury to disregard the argument gave defendant everything he sought, and perhaps more than he deserved. We find no merit in defendant's argument that the trial court should have ordered a mistrial sua sponte.

Judgment affirmed.

STEWART, P.J., and CRANDALL, J., concur.