**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Jimmy A. BULLOCK,**
**Defendant-Appellant.**

No. 12648.

Missouri Court of Appeals,
Southern District,
Division Two.

July 12, 1983.

---

2. Sections 473.263, RSMo 1978; *Bolin v. Anders,* 559 S.W.2d 235, 246[14] (Mo.App.1977).

Allan C. Wilcox, Joplin, for defendant-appellant.

John Ashcroft, Atty. Gen., Jerry Short, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Presiding Judge.

The defendant and Joe Owensby were truck drivers assigned by their employer to drive a tractor-trailer unit from Chattanooga, Tennessee, to California and back. On the return trip in Joplin, the defendant shot and killed Owensby. The defendant testified he shot in Owensby's direction because of fear of him. He contended he did not intend to hit Owensby. A jury found the defendant guilty of conventional second degree murder and assessed his punishment at imprisonment for ten years.

The defendant and Owensby began the fateful trip in the middle of December, 1980. The defendant testified that on the trip out, over his protest, Owensby drank whiskey and took amphetamines. Owensby bragged to him about how tough he was and repeatedly told him how good he was with a knife. One night Owensby got a girl and forced the defendant to sleep in the tractor. The defendant wanted to be reassigned and leave Owensby. While they were waiting for a return load, their boss was in Pomona, California. However, the defendant said he had no chance to talk to him because of the presence of Owensby.

While in Pomona, the defendant and Owensby became acquainted with drivers Underwood and Moore. The two teams apparently left Pomona about the same time. They again encountered each other at Hinton, Oklahoma. On the trip Owensby picked up a girl hitchhiker. The defendant complained about this. The two quarreled about this incident and other things, such as who was doing most of the driving. The defendant testified Owensby warned him not to report his unauthorized acts and threatened to cut him up. At Hinton, Oklahoma, the defendant slept in the tractor because he said he was afraid Owensby would cut him.

The two teams next met at a motel in Joplin. Owensby, contrary to regulations, unhooked the trailer and the four drove to a lounge at a motel. After a drink or two there, two rode and two walked to a nearby bar or nightclub. The four got a table.

They had more drinks and some of the group danced. The defendant and Owensby continued to quarrel. The defendant left. Ten or fifteen minutes later Owensby left. Soon thereafter, upon receiving a "man on the ground" call, a police officer arrived at the bar. Owensby was lying on the parking lot. A small caliber bullet wound had produced no external signs. Two men, Underwood and Moore, were there. The officer was told Owensby walked out of the bar and passed out. The officer was assured they would take care of Owensby. Owensby was placed in the tractor.

Underwood and Moore drove the tractor to the motel. The defendant was there. He advised them to take Owensby to the hospital as he just shot him. At their instance, the defendant called the police. They arrived in a very short time. An ambulance was called. Owensby was taken to the hospital where he died from a .25 caliber bullet wound to vital organs.

■ By his first point, the defendant argues the evidence does not support his conviction. In making this point, he emphasizes his version of what happened at the nightclub. He stated that he asked Owensby, who had the trip money, for money for a bus ticket home. They quarreled. He left to go sleep in the tractor. But, before he got in he heard Owensby holler at him and threaten him. He heard a knife click. He got his gun from the tractor. He thought Owensby had a knife and was afraid of him. He wanted to get back into the nightclub, but Owensby was between him and the door. He fired to Owensby's left and toward the ground to frighten him. The defendant ran to the not too distant motel because he was afraid. The defendant testified he told Underwood and a police officer who soon arrived, "He said I shot him."

With this emphasis the defendant contends the evidence does not establish the elements of conventional second degree murder, particularly the requisite intent to kill or do great bodily harm. The elements of conventional second degree murder have been repeatedly defined. *State v. Powell,* 630 S.W.2d 168 (Mo.App.1982). Also see MAI–CR2d 15.14. They need not be restated.

A consideration of all the evidence under an appropriate standard of review demonstrates the invalidity of the defendant's first point. "The facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." *State v. Powell,* supra, at p. 169. When so considered, there is evidence to establish the following facts.

The defendant was 6 feet tall and weighed 200 pounds. He admitted he saw no knife. Only a small pocketknife was found in the pocket of Owensby's jeans. The defendant told an interrogating officer he was not afraid of Owensby. He had military training in the use of pistols. He admitted he fired the fatal shot when he was 6 feet from Owensby. The bullet entered Owensby's body 2 inches below the left nipple. These facts, which include the use of a deadly weapon on a vital part of Owensby's body, support the conviction. *State v. Strickland,* 609 S.W.2d 392 (Mo. 1980); *State v. McGowan,* 621 S.W.2d 557 (Mo.App.1981).

In addition, he told an officer who arrived at the scene, "I shot the son of a bitch." He later told the interrogating officer that he had had all he could take from Owensby, he aimed to hit him and that Owensby got what he deserved. When Underwood asked him why he shot Owensby, the defendant replied, "I was all pilled up." These statements are direct evidence of the defendant's guilt. *State v. Ward,* 622 S.W.2d 354 (Mo.App.1981). This is true even though he made other self-serving statements. The evidence does not establish self-defense as a matter of law. *State v. Grier,* 609 S.W.2d 201 (Mo.App.1980); *State v. Taylor,* 602 S.W.2d 820 (Mo.App. 1980). It does support the conviction for conventional second degree murder. *State v. Ward,* supra; *State v. Gillam,* 588 S.W.2d

13 (Mo.App.1979); *State v. Carter,* 585 S.W.2d 215 (Mo.App.1979).

Before the trial commenced, the court ordered the prosecuting attorney to permit the defendant to inspect, out of the presence of the jury, any exhibits before they were offered. During the trial, the prosecuting attorney had the defendant's .25 caliber automatic pistol marked. He did so in front of the jury. The defendant objected upon the basis of a violation of the court's prior order. As a result, the trial court refused to admit the pistol in evidence. But, the trial court also refused the defendant's request for a mistrial. The defendant's second point is that this refusal constitutes prejudicial error.

▮ Whether or not a trial error demands the drastic remedy of a mistrial is ordinarily within the discretion of the trial court. *State v. Lansford,* 594 S.W.2d 617 (Mo. banc 1980); *State v. Jenkins,* 516 S.W.2d 522 (Mo.App.1974). The same is true of the failure of the state to comply with the prior order pertaining to discovery. *State v. Davis,* 556 S.W.2d 45 (Mo. banc 1977); *State v. Stewart,* 636 S.W.2d 345 (Mo.App.1982). The record is replete with testimony concerning the defendant's .25 caliber automatic pistol. It was undisputed that the defendant shot the decedent with that pistol. Under these circumstances, there is nothing in the record to establish reversible error because an admissible weapon was marked as an exhibit in front of the jury. *State v. Whitaker,* 312 S.W.2d 34 (Mo.1958); *State v. Robinson,* 595 S.W.2d 9 (Mo.App.1979). The action of the trial court was not error. The defendant's second point is denied and the judgment is affirmed.

HOGAN and PREWITT, JJ., concur.