## THE STATE v. TATE, Appellant.

### Division Two, May 8, 1900.

1. **Sufficiency of Evidence:** TRIAL AFTER APPEAL. Where a verdict has once been reversed by this court on the ground of the insufficiency of the evidence, and the cause remanded for a new trial, the court should not at the next trial direct a verdict for the defendant if there is additional and .important testimony introduced, which if true shows defendant's guilt.

2. **Witnesses:** NAMES INDORSED ON INDICTMENT. The fact that a witness's name is not indorsed on the indictment, is not sufficient ground for excluding his testimony.

3. **Affidavits In Support of New Trial:** TIME OF FILING. The verdict was rendered on June 29th, and next day defendant filed a motion for a new trial, and the court announced that the court would be adjourned to July 10th for the purpose of disposing of the motion, and that if defendant desired to file affidavits in support of his motion he could do so on or before July 6th or serve the prosecuting attorney with copies in order to give him an opportunity to file counter affidavits, neither of which was done within the time prescribed by the court. *Held,* that as the time fixed for the filing of the affidavits was reasonable and fair to both sides, the court did not abuse its discretion in refusing to permit the affidavits to be read.

4. **Arraignment.** Where defendant was arraigned, convicted and appealed to the Supreme Court, and the judgment reversed and the cause remanded for a new trial, it is not necessary to arraign him again.

Appeal from Newton Circuit Court.—*Henry C. Pepper,* Judge.

AFFIRMED.

*Cravens, Brunk & Hubbert* for appellant.

(1) The witnesses indorsed on the indictment—all of them—had testified, and none of them, nor all of them, could

make a case against defendant; then the indictment had not all or any of the material witnesses indorsed on it. Only the testimony of Charles Pitts could really, under the holding of this court on first appeal, be considered material in any true sense. His name was not on the indictment. But his testimony was afterwards sprung on defendant as a thunderbolt from a clear sky. The provision of law was meant to serve some purpose. If the indictment were good without any witness indorsed, then the court was right below. Otherwise it was not. (2) The court should have directed a verdict for defendant as asked. (a) The record showed that defendant had formerly been tried—that he had been entitled to a verdict of acquittal, which had been denied him by error of the lower court. The error of the lower court had been corrected by reversal of its judgment, the defendant had been adjudged entitled to a right which had then accrued to him, by reason of the court's error in depriving him of the benefit of the trial, at which he had a perfect legal right to be then and there acquitted. Defendant's right to have his release from further peril of his liberty was in no wise diminished by the necessity under which he had been forced to his first appeal to relieve himself of that error. This case should not be confounded with one where the reversal is occasioned by error in course of trial, but where there had arisen no right to have a verdict of acquittal directed. That right should have been awarded on his plea in bar, because not given when entitled to it before. (b) The evidence at this trial was so overwhelming for defendant, against whom no criminating fact was established, outside the testimony of Pitts; and the testimony of Pitts was of such character, from such a contaminated source and out of such motives and so utterly unsupported by any other fact or witness in the case, as shown by his own story, that a "yellow dog" should not be banished thereby from his master's back yard, and there was want of any evidence, to a reasonable and unprejudiced mind, of defendant's guilty com-

plicity in the matter; all these were so patent that the court should have unhesitatingly held the evidence not sufficient to warrant a verdict of guilty beyond a reasonable doubt. Pitts, by his own after-affidavit, illustrates the force of these suggestions. (c) But the testimony of Pitts should have not stood in the way at all. It did not belong in the case. His name was not indorsed on the indictment. It had already been held by this court that the witnesses indorsed thereon made no case against the defendant. It was known to all that any and all material witnesses must be found otherwise than by the indictment. The defendant had been overruled on his motion to quash for that and other reasons. Now, the law made for his protection was again invoked. Again it was demonstrated that the other witnesses made no case for the State, and this new witness, the only material witness—his testimony should not stand against defendant, and he should therefore be discharged.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) There is no merit in defendant's contention that the indictment should have been quashed, because the names of the material witnesses were not indorsed on the indictment. The names of the witnesses who testified before the grand jury were indorsed thereon, which is all the statute requires. This court can not listen to defendant's objection to the testimony of Pitts on the ground that his name was not indorsed on the indictment, because such objection was not made in the trial court; no objection was made to his testifying. It can not be raised in this court for the first time. State v. Nugent, 71 Mo. 136; State v. Roy, 83 Mo. 270; Sutton v. Comm., 97 Ky. 308. (a) Regardless of that fact, the very section of the statute, which requires that when an indictment shall be found by the grand jury, the names of all the material

witnesses shall be indorsed thereon, specially provides that the State may introduce witnesses whose names are not so indorsed. R. S. 1889, sec. 4097; State v. Nugent, 71 Mo. 136; State v. Griffin, 87 Mo. 608; State v. Smith, 137 Mo. 25. (b) The State may avail itself of any testimony, which the grand jury could not obtain, which it discovers before it closes its case, notwithstanding the name of the witness was not indorsed on the indictment. State v. Steifel, 106 Mo. 129; State v. Shreve, 137 Mo. 1; State v. O'Day, 89 Mo. 559. (2) The argument which appellant makes in his brief that the evidence of Pitts should be disbelieved, whether convincing or not, was a matter for the jury, and the question was considered by them, and surely can not be urged in this court. The fact of the complicity of this witness in the crime did not render him incompetent to testify; and the court, in instruction 7, fully and fairly stated the law to the jury as to the caution to be exercised in convicting the defendant on the testimony of an accomplice. State v. Riney, 137 Mo. 102; State v. Umble, 115 Mo. 452; State v. Watson, 31 Mo. 361; State v. Jones, 64 Mo. 391; State v. Reavis, 71 Mo. 419; State v. Jackson, 106 Mo. 174; State v. Williamson, 106 Mo. 162; State v. Woolard, 111 Mo. 248.

BURGESS, J.—At the May term, 1896, of the circuit court of Newton county, the defendant and one William South were jointly indicted by the grand jury of said county, and charged in the first count in the indictment with feloniously, on purpose and of their malice aforethought, shooting with a pistol with intent to kill one William Meadows, and in the second count with feloniously assaulting said Meadows with intent to rob. Upon motion of Tate a severance was granted him, and being put upon his trial he was convicted under the second count in the indictment, and his punishment fixed at two years' imprisonment in the penitentiary. He then appealed to this court, where the judgment was reversed and the cause remanded. [State v. Tate, 145 Mo. 667.]

After the case was returned to the circuit court, defendant filed his motion to quash the indictment, which being overruled be filed a plea in bar, whereupon the trial was proceeded with as of upon a plea of not guilty; the result being that defendant was again found guilty under the second count in the indictment and his punishment fixed at two years' imprisonment in the penitentiary.

After an unsuccessful motion for a new trial, and in arrest, defendant appeals.

The facts are substantially as disclosed by the record on the former appeal, with the exception of the additional testimony of one Charles Pitts, who testified that he was an accomplice of defendant and South; and that by previous arrangement between them they went together to Meadows' house after dark on the evening of April 18, 1896, for the purpose of robbing him of a large sum of money which defendant said Meadows had, and that in pursuance of that arrangement, defendant entered the house and shot Meadows with a pistol while he and South stood watch near by upon the outside, for the purpose of rendering any assistance to South that might be necessary.

The court, over the objection and exception of defendant, instructed the jury as follows:

"1.    The court instructs the jury if they shall find and believe from the evidence beyond a reasonable doubt that William South, on or about the 18th day of April, 1896, at the county of Newton and State of Missouri, feloniously, on purpose and of his malice aforethought, shot William Meadows with a loaded pistol, with the intent the moneys, goods and chattels of the said William Meadows, from the person and against the will of the said William Meadows, feloniously, by violence to his person, to rob, steal, take and carry away the moneys, goods and chattels of the said William Meadows. with the fraudulent purpose to deprive the said Meadows of his ownership therein, and to wrongfully appropriate the same;

and that John Tate was present, at the time of such shooting, aiding, abetting, encouraging or assisting the said South, or knowing the unlawful intent of South, defendant Tate had stationed himself with the intent to render any assistance to the said South, or so as to be ready to give the alarm in case of danger or necessity, then the jury will find the defendant Tate guilty as charged in the second count of the indictment, and assess his punishment in the penitentiary for a term not less than two years nor more than ten years.

"2.    The court instructs the jury that the term 'malice' as used in these instructions, does not mean mere spite or ill will as it is ordinarily understood, but in law, it means that condition of the mind which prompts one person to take the life of another without just cause or excuse, and signifies that state or disposition which shows a heart regardless of social duty and fatally bent on mischief.

"The term 'aforethought,' as used in these instructions, means thought of before any length of time however short.

"The term 'on purpose' as used in these instructions means intentionally and not accidentally.

"3.    The court instructs the jury that evidence is of two kinds, direct and circumstantial.    Direct evidence is where the witness testifies directly of his own knowledge of the main fact or facts to be proven.    Circumstantial evidence is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.    Crime may be proven by circumstantial evidence as well as by the direct testimony of eye witnesses, but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of defendant's innocence.

"4.    The court instructs the jury that the defendant is presumed to be innocent of the offense charged; before you can convict him, the State must overcome that presumption by

proving him guilty beyond a reasonable doubt. If you have reasonable doubt of defendant's guilt, you must acquit him; but a doubt to authorize an acquittal should be a substantial doubt, arising from the evidence, and not a mere possibility of his innocence.

"5.   The court instructs the jury, if they believe from the evidence that the defendant made any statement or statements in relation to the crime charged in the second count of the indictment, after the crime is alleged to have been committed, the jury must consider such statement or statements all together.   The defendant is entitled to the benefit of what he said for himself, if true, and the State is entitled to the benefit of anything he said against himself in any conversation proved by the State.   What the defendant said against himself, the law presumes to be true, because said against himself. What the defendant said for himself, the jury are not bound to believe, because it was said in a conversation proved by the State; but the jury may believe or disbelieve it as it is shown to be true or false by the evidence in the case; it is for the jury to consider under all the facts and circumstances in evidence, how much of the whole statement or statements of the defendant proved by the State the jury deem worthy of belief.

"6.   The court instructs the jury, if they believe from the evidence that the defendant made any statement or statements in relation to the crime charged in the second count of the indictment, such statement or statements should be received and weighed by the jury with great caution, taking into consideration the liability of the witnesses to forget or misunderstand what was really said; to misquote the language used; the failure of the defendant to have expressed his own meaning; or of the witness to have comprehended the meaning intended to be conveyed; the infirmity of human memory; the probability of the witness, intentionally or unintentionally, changing or altering the expression used.

"7.   The court instructs the jury that the testimony of

an accomplice in the crime, that is, a person who actually commits or participates in committing the crime, is admissible; yet the testimony of an accomplice in crime, when not corroborated by some witness or witnesses not implicated in the crime as to matters material to the issues, that is, matters connecting the defendant with the commission of the crime as charged against him, ought to be received with great caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict the defendant on such testimony.

"8. The jury are the sole judges of the credibility of the witnesses, and the weight to be given to their testimony. In determining such credibility and weight, you should take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling toward the defendant, the probability or improbability of his or her testimony, as well as all the facts and circumstances in evidence. In this connection, if you believe from the evidence that any witness has willfully sworn falsely as to any material fact in the case, you are at liberty to disregard all or any part of such witness's testimony.

"9. The court instructs the jury that one of the defenses interposed by the defendant in this case is what is known as an alibi; that is, that the defendant was in another place at the time of the commission of the crime. The court therefore instructs you that such defense is as proper and legitimate, if proved, as any other, and all evidence bearing on that point should be carefully considered by the jury. If, in view of all the evidence, the jury have a reasonable doubt as to whether defendant was in some other place when the alleged crime was committed, they should give him the benefit of the doubt, and acquit him. The defendant is not required to prove the defense of an alibi beyond a reasonable doubt to entitle him to an acquittal; it is sufficient if defendant upon this point raise

a reasonable doubt of his presence at the time and place where the crime is alleged to have been committed.

"10.   The court instructs the jury that the defendant's wife is a competent witness in his behalf, but the fact that he is the defendant on trial, and that she is his wife, may be considered by the jury in determining the credibility of her testimony.

"11.   The court instructs the jury that under the plea of a former acquittal, and under the evidence adduced by defendant in support of such plea, you will find the issues for the State.

"12.   The court instructs the jury that the defendant, John Tate, is charged in the second count of the indictment with an assault with intent to rob William Meadows, and this is the only charge for which he is being tried."

The following instructions were asked by defendant and refused.

"The jury are instructed that under the law controlling this case the defendant, Tate, must be presumed innocent of the crime charged against him until proved guilty by the evidence in the case.

"That no amount of suspicion or circumstances tending to show him guilty will justify a verdict of guilty under the indictment against him, unless it be proved by the evidence that he was personally present at the time and place of the alleged crime and taking part therein with the intent to rob Meadows.

"That, apart from the testimony of the confessed accomplice of the defendant in the assault upon Meadows, the evidence here against Tate is altogether circumstantial and not sufficient to prove him guilty.

"That one who admits that he aided in the crime and testifies that defendant also participated is called an accomplice, and the jury are required by the law to receive with great caution the evidence of such accomplice and scrutinize

his testimony with care in order to determine what amount of credit should be given him if any; and that his testimony should not be accepted as sufficient proof of defendant's guilt, unless the jury believe from all the evidence in the case that the defendant was present and participating in the crime against Meadows.

"That if the jury do not believe from the evidence in this case alone, uninfluenced by any other consideration, argument or suggestion that the defendant, Tate, was himself present and aiding or abetting in the assault upon Meadows with a pistol, and that in doing so he had in his mind the intent to rob Meadows by taking and carrying away something of value in his possession, then the defendant can not be convicted; and if the jury have any reasonable doubt as to whether defendant was so present and so aiding with such intent then he must be acquitted.

"That the jurors are the sole judges of the proper credit to be given to any and all the witnesses in the case, and in determining such credit the jury will take into consideration the relations of the witnesses to the case, their opportunities for the knowledge they profess, their powers of observation, their motives, prejudices and interests in the results of the trial and bias of mind, measured and judged according to the common experience and observation of men in affairs of life.

"If the jury should believe from the evidence that South and others went to the premises of Meadows, and that Meadows was assaulted with a pistol in the hands of South in pursuance of an intent on their part to rob Meadows by putting him in fear, but without previous intention to shoot him or have him shot, and that Meadows suddenly attempted to defend himself with a knife against the assailant, and then he was shot on a sudden by the robber, without malice aforethought, then there could be no conviction or punishment for the crime as charged in the indictment, but punishment could be inflicted for such crime only in an inferior degree, for which the punishment

State v. Tate.

to be assessed by the jury is imprisonment in the penitentiary not more than five nor less than two years, or in the county jail not less than six months, or by both a fine not less than $100 and imprisonment in the jail not less than three months, or by a fine not less than $100."

To which action of the court in refusing these instructions defendant excepted.

There is no merit in the contention that error was committed in overruling the motion to quash the indictment. The grounds assigned in the motion which go to its sufficiency are not borne out by the record, hence the motion was properly overruled.

It is asserted that the court should have directed a verdict for defendant. This contention is based upon the ground that the evidence upon the last trial was the same as upon the first, and as we reversed that judgment because of the lack of evidence to support the verdict upon which the judgment was rendered that the judgment from which the present appeal was taken must be reversed for the same reason.

If the evidence upon both trials was the same, this argument would at least be very persuasive, but as there was additional and very important testimony introduced by the State upon the last trial, which if true, showed defendant's guilt beyond any and all question, it is untenable. This testimony was that of Pitts, who testified that he was an accomplice of defendant and South, was a party to the arrangement to rob Meadows, and that he and Tate were present when the assault was made upon Meadows by South for that purpose in pursuance of said arrangement.

It is true, that Pitts is an ex-convict, that there was evidence tending to show him to be unworthy of belief, but the credit to be given to the evidence was for the consideration of the jury, who were the sole judges thereof. It can not be fairly said that there was no substantial evidence to support

the verdict, which the court approved, and under such circumstances this court will not interfere. [State v. Hibler, 149 Mo. 478.]

Nor was there error in not excluding the testimony of this witness. The fact that his name was not indorsed on the indictment was not sufficient ground for excluding his testimony. [Sec. 4097, R. S. 1889; State v. Smith, 137 Mo. 25.]

As the instructions given by the court covered every phase of the case, and presented it fairly to the jury, there was no error committed in refusing those asked by defendant.

The criticisms upon the State's third, fifth, seventh, eleventh and twelfth instructions, are exceedingly technical and without merit.

The verdict of the jury was returned on the 29th day of June, 1899. On the same day defendant filed a motion for a new trial assigning five different grounds therefor, and, on the day following he filed an amended motion for a new trial in which he assigned additional causes; among which were the misconduct of the jury in separating and talking with persons not members of their body during the trial, and newly discovered evidence after the trial tending to show that Charles Pitts was the leading and active person in the commission of the assault on Meadows, the purpose of which was his assassination and not robbery.

On the day that this amended or supplemental motion was filed the court announced from the bench that the court would be adjourned to the 10th day of July, 1899, for the purpose of disposing of this motion, and that if defendant desired to file affidavits in support thereof he could do so on or before the 6th day of July, 1899, or serve the prosecuting attorney with copies thereof in order to give him an opportunity to file counter affidavits, if he desired to do so. When the motion came to be passed upon by the court the defendant in support thereof offered in evidence the affidavits of the

defendant, John E. Tate, Lee D. Bell, Clint Caulrett, D. A. Farley and Samuel Tomlinson, to which the State objected because they had not been filed with the clerk of said court, nor copies served upon the prosecuting attorney, as required by the court. The objection was sustained, and in this ruling defendant insists that the court committed error. Whether the court would or would not permit the reading of these affidavits in evidence in support of the motion, was under the circumstances within its discretion, and in the absence of something tending to show that such discretion was abused this court will not interfere. [State v. Welsor, 117 Mo. 570.] The time fixed by the order of court for the filing of the affidavits, or if not filed, for service of copies thereof upon the prosecuting attorney, was reasonable and fair to both parties and defendant should not be heard to complain of his own failure to comply therewith.

A final contention is that there was no arraignment of defendant, and that the motion in arrest should have been sustained upon that ground. The record of the former appeal, however, shows that defendant was arraigned at the December term 1896 of said court and pleaded not guilty to the indictment, and it was not necessary that he should again be arraigned before being again put upon his trial.

Finding no reversible error in the record the judgment will be affirmed. It is so ordered. *Gantt, P. J.* and *Sherwood, J.,* concur.