**STATE of Missouri, Respondent,**

v.

**Danny Jewel GILLAM.**

**No. 39881.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 17, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Richard Thurman, Asst. Attys. Gen., Jefferson City, Albert G. Tindall, Pros. Atty., Potosi, for respondent.

Shaw, Howlett & Schwartz, Clayton, for appellant.

DOWD, Presiding Judge.

Appellant, Danny Jewel Gillam was convicted of second degree felony murder by a jury in the circuit court of St. Francois County, Missouri and sentenced to ten years imprisonment. Gillam appeals.

In his first four points relied on, appellant challenges the court's submission

of MAI–CR 6.06[1] as its instruction # 6 to the jury. In his first point, appellant contends the giving of the instruction was erroneous because it instructed the jury on the crime of conventional murder in the second degree, which was different from the offense of second degree felony murder with which he was charged in the information.

The relevant segments of the second amended information are set forth below:

" . . . that said defendant, Danny Jewel Gillam on the 31st day of July A.D.1976, at the said County of Washington did then and there with specific and criminal intent, knowingly, maliciously, unlawfully, wrongfully, willfully, on purpose, premeditatedly, feloniously, and of malice aforethought, did make an assault upon one Leon LeRoy Black with a loaded gun, to-wit: a 243 Cal. Winchester automatic rifle, and then and there, feloniously, willfully, premeditatedly, and of his malice aforethought did discharge and shoot said rifle at and upon the body of the said Leon LeRoy Black thereby feloniously inflicting a mortal wound upon the said Leon LeRoy Black, from which mortal wound Leon LeRoy Black did die and as part of the same occurrence did willfully, maliciously and feloniously shoot into the motor vehicle in which Leon LeRoy Black was a passenger, as a direct result of which shooting Leon LeRoy Black did die on July 31, 1976, contrary. . . ."

As we read the information, the offenses of conventional second degree murder (first part) and second degree felony murder (second part) are separately pleaded. The allegation that the appellant, in discharging a rifle at Mr. Black and thereby killing him, acted intentionally, willfully, premeditatedly and with malice aforethought constitutes a charge of conventional second degree murder. *State v. Randolph,* 496 S.W.2d 257 (Mo. banc 1973). The allegation that the appellant shot into a motor vehicle, thereby causing the death of Mr. Black, charges second degree felony murder. *State v. Williams,* 529 S.W.2d 883 (Mo. banc 1975).

Since we find the information charged both conventional second degree murder and second degree felony murder, appellant's point that the court submitted an instruction (conventional second degree murder) for a crime with which appellant had not been charged must fail.

The record reveals that on July 31, 1976 Carl Crocker and Leon LeRoy Black were four wheeling in a jeep through Potosi, Missouri. A deputy of the Washington County Sheriff's Department viewed the jeep as it traveled on Highway 8, and improperly passed another vehicle on the right. The deputy turned on his car's red lights, and began to pursue the jeep. While following the jeep as it headed into town and circled blocks, the deputy radioed for assistance from the Potosi Police Department. A Potosi Police Officer heard the call, and attempted to block the exit of a parking lot with his vehicle. The deputy chased the jeep into the parking lot and fired a warning shot up in the air because his siren was inoperative. As the jeep exited the parking lot, it struck the front of the Potosi Police Officer's car and continued on its way out of town. The jeep turned onto Highway P, followed by the Potosi Police Officer's car and the deputy's car.

The appellant, Danny Jewel Gillam had heard the deputy's request for assistance on his citizen's scanner which was tuned in to the Sheriff's Department. The appellant had assisted the police before, but had never been deputized. On hearing that the jeep was traveling down Highway P, the appellant moved his jeep onto the highway to effect a roadblock. Before the jeep had reached appellant's roadblock, the appellant was advised by the deputy over the monitor, "don't you mess with them. They are dangerous". As the jeep approached the roadblock, the appellant shot at the jeep's tires. The jeep negotiated around the roadblock and continued traveling on the highway. Carl Crocker testified that as he and the victim passed the appellant, they observed the latter pointing a rifle at them. The victim remarked that he thought "the guy (was) going to shoot us".

1. This is the murder in the second degree instruction.

Aiming at the right rear tire, appellant fired a second shot which pierced Black's left eye and severed his brain stem. Crocker testified that when the bullet struck *Black, he fell into Crocker's lap, and "there was blood flying everywhere."* Crocker drove a few more miles, and then pulled the jeep onto the shoulder of the road. The two police officers arrived on the scene, searched and handcuffed Crocker, and took him to the Potosi City Police Office. An ambulance was summoned to retrieve Black's body.

The evidence introduced in support of the pleading of conventional second degree murder in the information justified the submission of instruction # 6 to the jury. On cross-examination the appellant contended that he did not intend to kill the occupants of the jeep. The appellant admitted, however, that the call for assistance was not intended for him, that he went to his gun cabinet and got his .243 Winchester, drove his jeep onto Highway P, and voluntarily squeezed the trigger when the jeep carrying the victims passed by. The appellant also admitted that he was aware that his bullet could have missed the tire and punctured the gas tank. He also admitted that it was foreseeable that the bullet could have hit a tire, caused an accident, and resulted in serious bodily injury to the occupants of the vehicle.

In his second point relied on, appellant contends that the giving of instruction # 6 was erroneous because there was no evidence that the appellant intended to inflict serious bodily harm on either the victim or Carl Crocker. We disagree.

The element of intent, which is a prerequisite to a finding of second degree murder, may be inferred from the circumstances. *State v. Allen,* 530 S.W.2d 415, 420 (Mo. App.1975). In ascertaining the element of intent, the jury may consider the type of weapon used, the mode in which it was used, the effect of its use, as well as all of the surrounding circumstances. *State v. Woolford,* 545 S.W.2d 367, 371 (Mo.App. 1976).

As stated above, appellant admitted that his shooting at the jeep was a voluntary act. He considered himself to be a good marksman. He was aware that his act could *result in great bodily harm to another.* "General criminal intent is found 'when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result'". *State v. Shuler,* 486 S.W.2d 505, 509 (Mo.1972) quoting 22 C.J.S. Criminal Law § 35. There was sufficient evidence in the record from which the jury could find the requisite intent for a conviction of second degree murder. Point two is ruled against the appellant.

In his third point relied on, appellant alleges that the trial court improperly deviated from the language of MAI–CR 6.06 which states,

"Second, that the defendant intended to (take the life of) (cause serious harm to) (name of victim), and. . . ."

No discussion of this point can be found in the argument section of appellant's brief.

The trial court phrased this portion of the instruction as follows:

"Second, that the defendant caused the death of Leon LeRoy Black, intending to cause serious bodily harm to either Carl Crocker or Leon LeRoy Black, and . . . ."

The Notes on Use following MAI–CR 6.06 discuss the possibility of a case in which the defendant does not intend to kill, but instead intends to do serious bodily harm to another. After commenting that the offense must still be classified as conventional second degree murder, the Notes on Use advise that in such a case, as intent to do serious bodily harm exists in an intent to kill, the "better course" would be to instruct only on the intent to do serious bodily harm. Apparently, the trial court was of the opinion that the case could be so classified. We find no error in the court's instruction in this respect. Point three is ruled against the appellant.

■ In his fourth and fifth points relied on the appellant alleges that the court erred in submitting instructions # 6 (murder in the second degree) and # 7 (felony murder) to the jury because neither contained the "however" clause of pattern instructions MAI–CR 6.06 and 6.07. The omitted clause was:

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all the foregoing, then you must find the defendant not guilty (under Count . . .) of that offense."

The Notes on Use following MAI–CR 6.06 effective September 28, 1975, and applicable when this crime was committed in July, 1976, authorize the deletion of the "however" clause only in cases in which a separate instruction on mental disease or defect is submitted to the jury. Earlier Notes on Use under MAI–CR 6.06, effective March 1, 1975, referred to the Notes on Use and caveats under MAI–CR 6.02 in the event that instructions on various degrees of homicide are being submitted to the jury. The Notes on Use following MAI–CR 6.02 provide that the "however" clause must be omitted when the case is submitted on both murder and felony murder because a failure to find the defendant guilty of a murder would not necessarily compel an acquittal of a felony murder. And, see the current Notes on Use to MAI–CR 15.14, Murder: Second Degree, Conventional, effective January 1, 1979, which states that the "however" clause must be omitted " . . . (2) where a separate, additional instruction is given under MAI–CR 15.16 on Murder: Second Degree, Felony-Murder."

As an instruction on second degree felony murder was submitted separately from the instructions on conventional second degree murder and manslaughter, the deletion of the clause was proper. Finding no error in the court's instructions in this regard, we rule points four and five against the appellant.

■ In his sixth point relied on, appellant alleges that the trial court erred in its phrasing of instruction # 7. The latter instruction was submitted pursuant to MAI–CR 6.07, Murder: Second Degree, Felony Murder. Specifically, appellant contends that the court's language, "the defendant did so in committing or attempting to commit the offense of shooting into a vehicle," described a misdemeanor rather than felony offense. We disagree.

The Supreme Court requires literal compliance with the Missouri Approved Criminal Instructions, and regards any deviation from the "printed page" as an error the prejudicial effect of which is to be judicially determined. Rule 20.02(e). The trial court complied verbatim with the language of MAI–CR 6.07 which reads, "that the defendant did so (in committing or attempted to commit.)" Offenses Against Persons, MAI–CR 6.07, p. 6–6A.

The instruction embodies the legal principle that the felonious intent requisite to a conviction of murder under the felony murder rule, may be demonstrated by the commission of or the attempt to commit a felony. *State v. Chambers,* 524 S.W.2d 826, 829 (Mo. banc 1974), cert. denied 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976). Point six is ruled against the appellant.

■ In his seventh point relied on, appellant alleges that the trial court erred in submitting instruction # 8 (MAI–CR 6.08)[2] because appellant's evidence supported the giving of an instruction on culpable negligent manslaughter rather than one on intentional manslaughter.

In homicide cases in which separate instructions are submitted on conventional second degree murder and second degree felony murder however, "there must be an automatic submission of all lesser grades (MAI–CR 6.06 and *6.08*" (emphasis added). Caveat to MAI–CR 6.02, (b), 6–4A. As the pleadings and evidence supported the submission of instructions on conventional murder in the second degree and felony murder, the trial court properly submitted the MAI–CR 6.08 instruction on manslaughter.

---

2. MAI–CR 6.08 is entitled Manslaughter: Other than by culpable negligence.

■ Appellant contends that the trial court should have instructed the jury on culpable negligent manslaughter. (MAI–CR 6.10). There is no notation in the transcript indicating that this particular instruction was requested. Furthermore, there is no indication in the record that appellant objected to the giving of MAI–CR 6.08 in instruction # 8. An instruction on culpable negligent manslaughter is not to be given automatically. Caveat to MAI–CR 6.02 C, p. 6–4a.

As previously stated, the appellant, who deemed himself to be a good marksman, admitted to having voluntarily shot at the jeep after have been advised against interfering by the deputy, aware of the possibility that his action could result in serious bodily harm to the occupants of the jeep. The court did not err in not instructing the jury on culpable negligent manslaughter because the evidence did not support the giving of such an instruction. Point seven is ruled against the appellant.

■ In his two final points, the appellant alleges that the trial court erred in not giving an instruction on excusable homicide.

A court is required to instruct the jury on excusable homicide if the evidence supports the submission of the issue. (MAI–CR 2.28 Notes on Use # 1).

The defense of excusable homicide is described in § 559.050 (RSMo 1969), as follows:

"§ 559.050. Excusable homicide

Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases:

(1) In lawfully correcting a child, apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or

(2) In heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner."

Our review of the record has not revealed any evidence which would justify the giving of this instruction. The appellant was engaged in a self appointed overzealous mission to stop a speeding jeep. He aimed and shot a dangerous weapon at a vehicle, cognizant of the potentially fatal consequences, and killed Leon LeRoy Black. There was no evidence that appellant's act was lawful or accomplished with ordinary caution. Appellant was not entitled to an instruction on excusable homicide. Points eight and nine are ruled against appellant.

Judgment affirmed.

CRIST and SATZ, JJ., concur.