STATE of Missouri, Respondent,

v.

Christopher D. POWELL, Appellant.

No. WD 31773.

Missouri Court of Appeals,
Western District.

Jan. 19, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Feb. 23, 1982.

Application to Transfer Denied
April 13, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., and SHAN-GLER and SOMERVILLE, JJ.

SOMERVILLE, Chief Judge.

On December 2, 1977, a two count indictment was returned against defendant. Count I charged defendant with murder in the second degree (Section 559.020, RSMo 1969), and named his wife, Rhonda Powell, as the victim; Count II charged defendant with assault with intent to kill with malice aforethought (Section 559.180, RSMo 1969), and named Rosalyn Simpson as the victim. The indictment charged that both offenses occurred on January 21, 1977, in Jackson County, Missouri.

It is appropriate to set forth the chronology of this case in order to explain the lapse of time between the date of the indictment and the present appeal. On December 5, 1978, a jury found defendant guilty of both offenses as charged and judgment and sentence were rendered and pronounced accordingly. On direct appeal the convictions were reversed and the cause remanded for a new trial on the basis of *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). See *State v. Powell*, 585 S.W.2d 302 (Mo.App.1979). Defendant, on remand for a new trial, was again found guilty by a jury of both offenses as charged. However, the trial court sustained defendant's motion for a new trial and he was retried a second time on March 17, 18 and 19, 1980. Once again a jury found defendant guilty of both offenses as charged and assessed his punishment at one hundred (100) years imprisonment on the charge of murder in the second degree and sixty (60) years imprisonment on the charge of assault with intent to kill with malice aforethought. After an unavailing motion for judgment of acquittal or in the alternative for a new trial, judgment and sentence were rendered and pronounced accordingly, with said sentences ordered to run consecutively, and defendant appealed.

On appeal, both convictions come under attack by defendant under one point, i.e., that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because "no rational trier of fact could find" him "guilty" of either offense "beyond a reasonable doubt" as the only evidence bearing upon the requisite elements of the respective offenses, particularly the element of intent, was that defendant shot the gun "which caused the victims' wounds."

As a prologue to determining the sufficiency of the evidence to support the guilty verdicts of murder in the second degree and assault with intent to kill with malice aforethought, certain manifest principles bearing upon appellate review and the respective elements of the charged offenses warrant mention.

The facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. Franco*, 544 S.W.2d 533, 534 (Mo.banc 1977), *cert. denied* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275; *State v. Chase*, 444 S.W.2d 398, 401 (Mo.banc 1969); and *State v. McGlathery*, 412 S.W.2d 445, 447 (Mo.1967).

Cases are legion holding that the willful, premeditated killing of a human

being with malice aforethought constitutes murder in the second degree. *State v. Franco, supra*, 544 S.W.2d at 535; *State v. Chambers*, 524 S.W.2d 826, 829 (Mo.banc 1975); *State v. Jewell*, 473 S.W.2d 734, 738 (Mo.1971); *State v. Mattingly*, 573 S.W.2d 372, 374 (Mo.App.1978); and *State v. Cook*, 560 S.W.2d 299, 303 (Mo.App.1978). In the context of murder in the second degree, "[w]ilful simply means intentional", *State v. Meaney*, 563 S.W.2d 117, 119 (Mo.App.1978), and the element of intent is a prerequisite to a finding of murder in the second degree, *State v. Gillam*, 588 S.W.2d 13 (Mo.App. 1979). Premeditation, in the context of murder in the second degree, " 'means thought of beforehand, any length of time, however short' ". *State v. Smart*, 485 S.W.2d 90, 93 (Mo.1972), quoting from and citing *State v. Kilgore*, 70 Mo. 546, 555 (1879). Malice aforethought, in the context of murder in the second degree, means "the intentional doing of a wrongful act without just cause or excuse." *State v. Smart, supra*, 485 S.W.2d at 93, citing *State v. Williams*, 323 S.W.2d 811, 813 (Mo.1959), and *State v. Ayers*, 305 S.W.2d 484, 486 (Mo. 1957).

■■■ The element of intent, as a prerequisite to a finding of murder in the second degree, may be inferred from the circumstances, and a jury in its ascertainment thereof "may consider the type of weapon used, the mode in which it was used, the effect of its use, as well as all of the surrounding circumstances." *State v. Gillam, supra*, 588 S.W.2d at 16. Concomitantly, intent, in the context of murder in the second degree, may be found when, under the circumstances, the prohibited result may reasonably be expected to follow from a voluntary act, irrespective of any subjective desire on the part of the offender to have accomplished the prohibited result. *State v. Gillam, supra*, 588 S.W.2d at 16. See also *State v. Shuler*, 486 S.W.2d 505, 509 (Mo.1972), quoting 22 C.J.S. *Criminal Law* § 35.

■■ The elements of assault with intent to kill with malice aforethought, in the context of this case, are, as delineated in Section 559.180, RSMo 1969, that defendant on purpose and with malice aforethought shot Rosalyn Simpson with a deadly weapon with intent to kill her. *State v. Gant*, 586 S.W.2d 755, 766 (Mo.App.1979). "On purpose" has been held to mean "intentionally, and not accidentally." *State v. Tate*, 156 Mo. 119, 56 S.W. 1099, 1100 (1900). "Malice aforethought", as used in Section 559.180, RSMo 1969, has been defined as the doing of an act " 'intentionally and without just cause or excuse and after thinking about it beforehand for any length of time.' " *Hardnett v. State*, 564 S.W.2d 852, 854 (Mo. banc 1978). Specific intent is a requisite element of an offense charged under Section 559.180, RSMo 1969 (formerly Section 559.180, RSMo 1959). *State v. Selle*, 367 S.W.2d 522, 527 (Mo.1963). This requisite degree of intent is infrequently susceptible of direct proof and "may be inferred from facts and circumstances which legitimately so permit." *State v. Selle, supra*, 367 S.W.2d at 527.

As garnered from the above, a degree of affinity exists between the requisite elements of murder in the second degree and assault with intent to kill with malice aforethought, although death on the one hand and survival on the other hand is a noticeable line of demarcation. Moreover, the ascribed elements of each individual offense internally overlap in many respects.

A review of the evidence deemed germane to defendant's single point on appeal, consistent with the manifest principles previously enumerated, is now in order. On January 20, 1977, defendant's wife Rhonda Powell, from whom he was separated, spent the day and night at the apartment of her friend Rosalyn Simpson. The apartment was located in a housing complex at 2011 East 10th Street, Kansas City, Jackson County, Missouri. That evening, defendant came to Rosalyn Simpson's apartment to see his wife at which time Rosalyn Simpson informed him that she was being threatened by a former boyfriend. Defendant left the apartment and returned later that evening with a "sawed-off", "single-shot", ".20 gauge shotgun" which he obtained

from an unidentified acquaintance for the ostensible purpose of protecting Rosalyn Simpson.

The group spent the night of January 20, 1977, at Rosalyn Simpson's apartment, and the next morning, January 21, 1977, went to Rhonda Powell's apartment which was located in the same building. During the afternoon of January 21, 1977, defendant returned to the apartment of Rosalyn Simpson, retrieved the .20 gauge "sawed-off" shotgun which had been left there, took it to his wife's apartment, and placed it in the living room closet. Later in the afternoon, defendant left his wife's apartment and returned with a bag of marijuana, cigarette papers, and beer which he purchased with money furnished by Rosalyn Simpson.

During the course of preparing dinner, defendant, his wife, and Rosalyn Simpson sat around the kitchen table and shared two marijuana cigarettes. The three also consumed some beer. Rosalyn Simpson rolled a third marijuana cigarette, and placed it on the kitchen table while she got up to get a glass of water. Upon returning to the kitchen table, Rosalyn Simpson discovered that defendant had taken the freshly rolled marijuana cigarette. Whereupon, both Rosalyn Simpson and Rhonda Powell informed defendant that it was unnecessary for him to take the cigarette since there was sufficient marijuana in the bag from which he could have rolled another one.

Defendant apparently concluded that he had been accused of stealing the marijuana cigarette, and an angry exchange of obscenities erupted between defendant and Rosalyn Simpson. Defendant stormed out of the kitchen, went into the living room, and sat down on the couch. He then got up, walked to the living room closet, removed the .20 gauge shotgun, and walked back towards the kitchen. During this interim period, Rosalyn Simpson decided to leave the apartment and, in preparing to do so, sat down on a kitchen chair to put on her shoes. When defendant reached the entrance between the living room and the kitchen, Rosalyn Simpson looked up from where she was sitting and was shot by

defendant as she stared into the barrel of the .20 gauge shotgun. The shot struck the right arm of Rosalyn Simpson with such force that she was knocked from the chair onto the kitchen floor near the stove where Rhonda Powell was preparing dinner. Rosalyn Simpson's right arm was nearly severed by the shot, and was subsequently amputated and replaced with an artificial arm and hook.

Defendant, after shooting Rosalyn Simpson, ejected the spent shell from the single shot .20 gauge shotgun and reloaded the gun. He then turned towards his wife, Rhonda Powell, said, "Bitch ... I didn't steal nothing", and shot her. The shot struck Rhonda Powell in the left upper lobe area of the chest, and caused her death. Rhonda Powell fell across the lower portion of Rosalyn Simpson's body where she was lying on the kitchen floor. Defendant reloaded the shotgun a second time and left the apartment after shooting out the screen of the television set located in the living room. Defendant then contacted a security officer in the housing complex and told him he shot the two women.

Defendant was familiar with the operation and use of a shotgun by virtue of his past military service. The hammer of the .20 gauge sawed-off shotgun had to be manually cocked before pulling the trigger to fire it, and the breech had to be manually opened before it could be reloaded.

■ Based on the evidence set forth above, the jury could and obviously did find beyond a reasonable doubt that defendant was guilty of second degree murder. Going to the living room closet and removing the .20 gauge sawed-off shotgun, proceeding to the kitchen of the apartment, manually cocking the weapon, and firing it at and fatally wounding Rhonda Powell in a mood of anger, constituted substantial evidence from which the jury could find beyond a reasonable doubt that defendant willfully, premeditatedly and with malice aforethought shot and killed his wife. The principal argument advanced by defendant is that the evidence failed to show the requisite degree of intent on his part to sup-

port a finding of murder in the second degree, since, at best, it merely showed that his wife was killed by use of a deadly weapon upon a vital part of her body. Expounding further thereon, defendant argues, on the basis of his unrealistic assessment of the evidence, that no presumption of murder in the second degree arose, and, perforce, an essential elemental gap existed in the state's case. *State v. Black*, 611 S.W.2d 236 (Mo.App.1980), cited by defendant, is obviously the source of this argument. Defendant attempts to equate the evidence in this case with that in *State v. Black, supra*, where the state sought to sustain a conviction for murder in the second degree on the premise "that where the evidence shows a killing by the use of a deadly weapon upon a vital part of the body, second degree murder is presumed." Id. at 239. In *Black*, the evidence disclosed that while accused was handing a shotgun to her husband it accidentally discharged and killed him. The court noted that no evidence was adduced that the accused and her husband had any argument, disagreement, or fight, nor was there any evidence adduced to establish a motive on the wife's part for killing her husband. On the basis of such limited facts, the court in *Black* rejected the state's contention that a presumption of murder in the second degree arose to support the state's burden of proof. The court in *Black* further noted in the body of the opinion, albeit with a footnote caveat, that "[w]hile intent may be inferred from the circumstances, the presumption of second degree murder does not apply unless the homicide was 'intentionally committed.'" Id. at 239. Defendant has warped the facts in the instant case to suit his own convenience in a zealous effort to bring it within *State v. Black, supra.* Suffice it to say, unlike the facts in *Black*, a plethora of substantial evidence existed in this case from which the jury could find beyond a reasonable doubt that defendant, from start to finish, intentionally shot his wife Rhonda Powell with intent to kill her. Defendant's look at the evidence with tunnel vision and his misplaced effort to bring it within *State v. Black, supra*, have a hollow ring regarding his claim that no substantial evidence was adduced to support a finding by the jury beyond a reasonable doubt that he intentionally killed his wife.

■ Likewise, based on the evidence previously set forth, the jury could and obviously did find beyond a reasonable doubt that defendant was guilty of assault with intent to kill with malice aforethought. Once again, going to the living room closet and removing the .20 gauge sawed-off shotgun, proceeding to the entrance to the kitchen, manually cocking the weapon, and firing it at and severely wounding Rosalyn Simpson in a mood of anger, constituted substantial evidence that defendant on purpose and with malice aforethought shot Rosalyn Simpson with a deadly weapon with intent to kill her. Defendant, paralleling the salient portion of his argument launched against the sufficiency of the evidence to support an intent to kill his wife, likewise contends that the evidence was insufficient to support a finding by the jury that he intended to kill Rosalyn Simpson when he assaulted her. This argument also has a hollow ring. *State v. Kopf*, 481 S.W.2d 7, 9 (Mo.1972), in affirming a conviction for assault with intent to kill with malice aforethought, held that "[i]n determining the intent with which defendant acted the jury could take into consideration the nature of the weapon used, the manner of using it, the results of its use, and all of the related circumstances." When superimposed upon the facts of this case, any question as to the sufficiency of the evidence to support a finding by the jury that defendant assaulted Rosalyn Simpson with intent to kill her is resolved against defendant.

Defendant's attempted reliance upon his own exculpatory testimony to sustain his attack upon the sufficiency of the evidence to wit, that he did not intend to kill either his wife or Rosalyn Simpson, is of no avail as it was the prerogative of the jury to disbelieve and reject defendant's exculpatory testimony. *State v. Cook, supra*, 560 S.W.2d at 304.

Judgment affirmed as to both counts.

All concur.