STATE of Missouri, Respondent,

v.

**Larry Dean VAUGHN, Appellant.**

**No. WD 36680.**

Missouri Court of Appeals,
Western District.

Feb. 4, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled and
Denied March 27, 1986.

Application to Transfer Denied
June 17, 1986.

Gary L. Stamper, Bear, Hines, Thomas, Dierkes & Stamper, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and TURNAGE and BERREY, JJ.

SHANGLER, Presiding Judge.

The defendant Larry Dean Vaughn was convicted by a jury of murder in the second degree and was sentenced to imprisonment for a term of thirty years. The appeal contends that the evidence was not suffi-cient to prove the cause of death or that the defendant was the criminal agent of the death. We affirm.

In the morning of March 2, 1984, the Vaughn family came together at the home of Bobby and Bonnie Vaughn to celebrate the birthday of a child. The adults by then already foregathered were Dorothy Vaughn [sister of host Bobby], another brother, Billy Vaughn, neighbor Sam Jackson, and brother defendant Larry Dean Vaughn. Among them also was Geneva Vaughn, the mother. The occasion was well supplied with beverages, among them beer, Peppermint Schnapps, and Wild Turkey whiskey. The defendant Larry was a very heavy drinker—an alcoholic—and by the time he arrived at the party had already consumed drinks of alcohol, and brought with him two fifths of Peppermint Schnapps. The mother, Geneva, was mentally unstable and alcoholic drink affected her physically as well as mentally. The defendant Larry, nevertheless, encouraged the mother to take alcohol several times during the morning, offered her a bottle, and the mother drank and became intoxicated.

Later that day, at about 4:30 p.m., another daughter, Frances Vaughn Edwards arrived with husband Dan. They had come, not for the party occasion, but to take Bobby and Bonnie Vaughn to dinner. Frances saw immediately that her mother, Geneva, was intoxicated, and learned that brother Larry—the defendant—had prompted the mother to consume drinks. Bonnie testified that thereupon Frances confronted Larry in the kitchen. Larry told Frances: "It's none of your business. You don't belong here anyway," and pushed her through the door into the living room. Frances testified, somewhat at variance, that she went into the kitchen, not to confront Larry, but to settle some children who were in argument. She returned to the others in the living room, talked a while about the mother and her drinking, and decided to leave. She entered the kitchen again, this time to retrieve her purse and her coat. That is when Larry grabbed her

from the back by the brassiere strap, turned her around "and started cussing." The strap broke, Larry struck her in the face with his hand. The defendant Larry pushed Frances into the living room and out the front door—and as he did "grabbed up Daniel," then seated in the living room, and pushed him out with her. Larry was momentarily restrained by brother Billy and neighbor Jackson, but he broke loose and shoved the couple outside the door onto a small concrete porch and renewed the battery upon Frances. Dan, her husband, attempted to intervene and grabbed Larry's arm. Larry turned on Dan and knocked him to the ground, and kicked him as he lay there. The blows were to the back of the head—at the center—and in the mid-back of the torso. Frances attempted to shield Dan, while Dan complained he could not breath. The three became enmeshed and rolled down the hill—while Larry held Dan in a headlock. Larry was finally made to release Dan by the intervention of brother Billy and neighbor Jackson. Dan sat up for a moment, then fell back, began to shiver, while his eyes rolled back. An ambulance was called. Dan was motionless and appeared to be not breathing well. Larry, in the meanwhile, stood by with a Wild Turkey bottle in his hand, from which he drank, and remarked: "I don't care if Dan has ten seizures. I wouldn't care if he dies." He also argued with Frances about some money she owed him.

The police arrived and found Dan motionless on the ground, and Larry, whiskey bottle in hand, intoxicated and in argument with others. The paramedics arrived within minutes and found Dan without breath or pulse. They diagnosed his condition as cardiac arrest, initiated the CPR procedure, and detected no electrical activity in the heart. Daniel was taken to the hospital, but he was already dead.

Dan Edwards was a sickly person, afflicted with rheumatoid arthritis. He had a history of hospital treatment and had been discharged from employment because of his debilities. He was not able to do simple things, many times, such as tie his shoes or

dress, or even pour his coffee. In the months before the death, Dan was sicker than usual and had lost a great deal of weight. The defendant Larry knew about that sickly condition, and had loaned Frances and Dan money for hospital bills.

A forensic pathologist and medical examiner for the county, Dr. Jay Dix, performed the autopsy. That examination revealed that Dan had suffered two previous heart attacks, as evidenced by scar tissue. There were also abrasions on the face and back. Dr. Dix listed the cause of death as arteriosclerotic heart disease, and the manner of death as homicide. Dr. Dix concluded that prior to death, Dan was "a sick individual." The abrasions were not so severe as to cause death. He gave opinion that the death resulted from the stress induced by the kicks and the circumstances which caused an irregular heart rhythm and sudden death. Or, in the exact terminology:

> The kicking or the multiple blows a person would receive would cause the heart to beat faster because of a stressful condition. A stressful condition can lead to either heart attack or an unusual heart rhythm which then can cause a person to die suddenly. I feel that the nature of the blows and the time reference to when they occurred versus when the decedent collapsed was sufficient to join those two together and relate the cause and effect.

Dr. Greg Flaker, a cardiologist [who did not examine the body of the deceased victim], testified that while the abrasions did not cause death, a variety of stresses could precipitate arrhythmic heartbeat [ventricular fibrillation] and death. The doctor could not tell whether the emotional stress caused the heart failure and death or whether it was the "physical scuffle, putting additional stress on the heart."

The defendant Vaughn was charged under second degree murder § 565.004, RSMo 1978, then in effect. The willful, premeditated killing of a human being with malice aforethought constitutes murder in the second degree under that statute. *State v. Franco*, 544 S.W.2d 533,

535[1-4] (Mo. banc 1976). An intent to kill or to cause serious bodily harm is an essential element of the offense. *State v. Cook,* 557 S.W.2d 484, 485[1-4] (Mo.App.1977). That element is proven by circumstances where the proscribed result—the death—may reasonably be expected to follow from a voluntary act, whether or not the actor actually meant to inflict death. *State v. Powell,* 630 S.W.2d 168, 170[5, 6] (Mo.App. 1982). The defendant does not dispute these principles, but contends that the corpus delicti—the substantial fact that a crime was committed—was not proven. The corpus delicti of a homicide consists of two elements: the death of a human being and the criminal agency of another. That proof, however, does not suffice for conviction: the prosecution evidence must show yet another element—a criminal act of the defendant as the cause of death. *State v. May,* 689 S.W.2d 732, 736[1-6] (Mo.App. 1985).

■ The defendant contends on appeal that causation was not proven, and hence conviction cannot stand. He argues that the medical testimony—rendered by both Dr. Dix for the prosecution and Dr. Flaker for the defense [1]—evinces that death was caused by unusual heart rhythm or attack induced by stress, but that medical opinion was unable to say whether the stress which brought on the fatal heart action was a reaction to the physical blows or merely to the circumstances of altercation. The defendant cites as conclusive on the issue the excerpt from *State v. Brinkley,* 354 Mo. 1051, 193 S.W.2d 49 (1946), at 54[5]:

> [W]here a plaintiff shows a casualty resulted from one of several causes, for only part of which the defendant was responsible, no case is made—unless the evidence also shows a *greater probability* that the proximate cause was one for which the defendant was liable. [emphasis in original]

That statement of doctrine [rendered from *Guthrie v. City of St. Charles,* 347 Mo. 1175, 152 S.W.2d 91 (banc 1941), a civil case for damages in tort, and transposed to the criminal law] adduces the rationale that where the evidence of the party with the burden of proof shows that the homicide resulted from one of several *independent* causes, causation—and hence criminal agency—is not proven unless the evidence shows also that death resulted more probably from a cause occasioned by the defendant. The defendant concludes, that since there is no medical evidence that the fatal stress was induced more probably by the physical blows—for which he was responsible—than from the circumstances of the altercation [the excitation from the intervention by decedent Dan in the scuffle between the defendant and sister Frances] —for which he was not responsible—the proof of causation of death lacks, and conviction was not proven.

That syllogism, however, postulates hypothesis and not fact. There was no evidence that Dan ever became embroiled in the altercation between wife Frances and her brother Larry, except until *after* defendant Larry had already commenced the assault on Dan—an assault which never relented until the moment before Dan died. There was hardly time. Frances went into the kitchen to confront Larry [as Bonnie testified] or to retrieve her coat [as Frances testified], when Larry spun her around by the brassiere, cursed her, struck her in the face, and pushed her into the living room. As he did, he caught up Dan who was seated there, and thrust them both out of the front door. *Then* Dan attempted to prevent Larry from further assault on his wife, and in turn was pummeled, locked by arms around the head, and all three were grappled as they rolled down the hillside where Dan died. It was on these facts that Dr. Dix gave his medical opinion as to the

---

**1.** Our review determines whether the evidence was sufficient to submit the offense and whether reasonable persons could have convicted on that evidence. In that exercise, we consider the evidence in a light most favorable to the prosecution and disregard inferences to the contrary. *State v. Branscomb,* 638 S.W.2d 306, 307 (Mo. App.1982); *State v. Teter,* 633 S.W.2d 417, 419 (Mo.App.1982). Thus, the testimony of defense witness Dr. Flaker, even if it can be understood to support the ambivalent causation theory of the defense, need not be examined.

cause of death—and found a "cause and effect" between "the blows and the time reference to when they occurred."

Thus, the evidence shows an identifiable, unitary and irreducible cause of the stress which brought on the excited heart action and death: the physical assault by the defendant on the decedent within the exacerbative context of the entire course of the altercation—conduct for which, the jury could have found, the defendant was legally responsible. Thus, also, the evidence does not give off inferences of independent and equally possible causes of death so as to require proof that the death more probably resulted from one cause [stress induced by physical assault] rather than from another [stress induced by emotional reaction], as in *Brinkley.*

■ It happens that the stress on the heart was induced in a person with a heart already enfeebled by disease, so that the blows to the decedent, absent the latent heart defect would not have caused death. A person, however, is criminally responsible for a homicide by whatever means it is accomplished, provided it was proximately caused by his unlawful act. *Brinkley,* 93 S.W.2d at 55[7]. A person proximately causes the death of another, and hence is criminally culpable, where [*State v. Frazier,* 339 Mo. 966, 98 S.W.2d 707, 713[7] (1936) quoting 29 C.J. § 57, p. 1082]:

> the deceased was in feeble health and died from combined effects of the injury and of his disease, or if the injury accelerated the death from the disease ... although the injury alone would have not been fatal ... [and] although the disease itself would probably have been fatal, if the injury accelerated death.

It is immaterial that the defendant did not know the deceased was in the enfeebled condition which facilitated the death, or that he did not anticipate the conduct would cause death. *Frazier,* 98 S.W.2d at 713[7]. In such circumstances, it is enough that the evidence shows the unlawful act to be "a contributing proximate cause, although other contributing causes may have intervened." That principle of causation governs this case, and the evidence sufficed to prove the criminal agency of the defendant Vaughn under that principle.

In *Frazier* the defendant struck the deceased a blow in the face, which alone would have been insufficient to cause death, but the deceased was a hemophiliac and bled to death from a laceration caused by the blow. It was held that the blow was a contributing proximate cause and the defendant was guilty of homicide. In *State v. Johnson,* 475 S.W.2d 95 (Mo.1971), the *Frazier* principle was given effect to find causation for death, and hence criminal agency of homicide, where a blow to the forehead—not sufficient in itself to cause death—combined with a fatty metamorphosis of the liver induced by alcoholism to contribute to the death of the victim. In *State v. Bates,* 607 S.W.2d 753 (Mo.App. 1980) the defendant pushed the victim, unconscious from alcohol and clad only in jeans and a T-shirt, from the pickup vehicle onto a road covered with ice and snow, and left him there. The temperature was very cold, about ten degrees, and a strong wind blew. The victim died and the coroner gave opinion that the death was from exposure to cold *and* alcoholic intoxication. The defendant [as does Vaughn here] argued the *Brinkley* rule that where the prosecution evidence shows the casualty resulted from one of several causes, for only part of which the defendant was responsible, no criminal agency is proven— unless the evidence also shows a greater probability that the proximate cause was one for which the defendant was liable. *Bates* cited *Frazier* to hold that the evidence of the exposure of the victim to the frigid weather in scant dress and the alcoholic intoxication presented not *independent* causes of death as in *Brinkley,* each equally valid and hence none probative of criminal agency in the absence of other proof that the conduct of the defendant was more probably the cause of death, but of *contributory* causes [at 759]:

> So far as that one point is concerned, a person is criminally responsible for a homicide in whatever manner or by what-

ever means it was accomplished, provided it was proximately caused by his unlawful act. And the unlawful act need to be the immediate cause of death. It is enough that it be a contributing proximate cause, although other contributing causes may have intervened.

*See also State v. Kincade,* 677 S.W.2d 361 (Mo.App.1984).

The evidence of the witnesses proves that the stress which induced the heart failure was brought on by the unlawful assault by defendant Vaughn upon Dan Edwards. The medical evidence proves that this initial and continued physical stress engendered emotional stress so as to produce an inextricably compounded but unitary cause of the excited heart action and death. Thus, the problem of several *independent* causes *Brinkley* addresses does not arise. The medical evidence proves also that Dan Edwards was already enfeebled by heart disease when he was assaulted and that the disease contributed to the death. In such circumstances, the evidence was sufficient to establish that the assault by the defendant was a proximate contributing cause of the Dan Edwards' death, and was a sufficient basis for the jury determination that the death was caused by the criminal agency of the defendant. *Frazier,* 339 Mo. 966, 98 S.W.2d 707 (1936).

The judgment is affirmed.

All concur.