**STATE of Missouri, Respondent,**

v.

**Jean LOWREY, Appellant.**

**No. 54395.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 14, 1989.

Lew Kollias, Columbia, for appellant.

William L. Webster, Atty. Gen., and Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals from a jury conviction for assault in the second degree for striking an almost three-year-old boy, where the assault combined with a prior serious injury resulted in his death. Defendant was sentenced to a term of two years' imprisonment. We affirm.

Defendant asserts the State did not present evidence sufficient to support a finding by the jury defendant had the cul-

pable mental state of recklessness. Assault second degree, § 565.060, RSMo 1986, is defined as follows:

(1) A person commits a crime of assault in the second degree if he:

* * * * * *

(3) Recklessly causes serious physical injury to another person.

Recklessness is defined in § 562.016, RSMo 1986, as follows:

4. A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

Michael Ross, the victim, died on the evening of February 10, 1987. He was almost three-years-old. A short time before Christmas in 1986, Janet Ross, Michael's mother and a Kentucky resident, was unable to care for Michael, her youngest child, so she sent him to Revere, Missouri, to be cared for by her brother and defendant sister-in-law, who were already caring for Ms. Ross's two older children. The children were cared for by their grandmother, who also lived in Revere, when her son and daughter-in-law were unable to do so.

At trial, the State called Dr. Torres, a pathologist who conducted the autopsy of Michael. He determined Michael had a total of five head and face bruises, varying in age from four hours to four days, three scars of undetermined age, and a deep laceration in his lip that was approximately two weeks old. Upon opening Michael's skull, he found a massive subdural hematoma that was four weeks or less old, and a relatively minor subarachnoid hemorrhage on the surface of the brain that was less than twenty-four hours old. Dr. Torres determined the subarachnoid hemorrhage combined with the pre-existing subdural hematoma to cause Michael's death.

Grandmother was also called by the State. She described the victim as a normal, but quiet child, small for his age. She stated that approximately two months before Michael's death, he had fallen and hurt his forehead on the sidewalk. He fell again soon thereafter. Also approximately three to four weeks prior to Michael's death, defendant came over and called a doctor. She told the doctor Michael had fallen and hurt his head on a piece of furniture and seemed disoriented. Defendant took Michael to be examined by the doctor. It was later stipulated this doctor examined Michael on January 21, and he would testify Michael had received an acute traumatic head injury. Grandmother also observed that several weeks before Michael's death, his whole back side was black and blue. She asked defendant about it, and she said Michael had wet the bed two times last night and she had "beat his butt."

Grandmother said that on February 10, 1987, Michael was at her house and was picked up by defendant at 2 p.m. He had been playing and seemed to be fine. About 4:30 that afternoon, defendant came carrying Michael and said, "I think he is dead." Defendant and grandmother attempted to resuscitate Michael until an ambulance arrived. He was taken to the hospital in Keokuk, Iowa, where he died a short time later.

The day after Michael's death, Dr. Torres conducted an autopsy of Michael. After the autopsy, the two investigating police officers visited defendant at her home and questioned her. This interview was tape-recorded and introduced at trial. During the first twenty minutes of the tape-recorded questioning, defendant denied any knowledge of any head injury or blow to Michael's head. After being told the cause of Michael's death, defendant responded, "If I tell you the truth, I'll go to jail." Defendant then admitted striking Michael in the head.

Defendant told the police that on the afternoon of Michael's death, he was in his room crying for no apparent reason. The room was very small, with two homemade twin beds, having two by four bedposts approximately 30 inches high. There were many toys scattered about the floor.

Defendant said she came into the room and asked Michael why he was crying. When he responded that nothing was wrong, defendant then said, "I'll give you something to cry about." She then struck the 36-inch high child with her open left hand in the head. Michael fell backwards and sideways into a 30-inch high two-by-four bedpost and then either into the wall another 20 inches away or onto the floor. He got up and appeared to be normal but collapsed about thirty minutes later. Defendant then took Michael over to her mother-in-law's house where they tried to resuscitate him while waiting for the ambulance.

Defendant asserts she did not possess the required culpable mental state because she had no knowledge that Michael had a pre-existing medical condition, and the slap alone was insufficient to have caused serious physical injury.

Defendant caused Michael's death through her actions. Her striking Michael accelerated his death by combining with the pre-existing condition, even though the results of her blow would not, alone, have brought about his death. Defendant is criminally responsible for the assault because it was the proximate cause of Michael's death. *State v. Vaughn,* 707 S.W.2d 422, 426 [4] (Mo.App.1986); *State v. Allen,* 710 S.W.2d 912, 917 [13, 14] (Mo.App.1986).

There was sufficient evidence for the jury to find defendant acted recklessly as required for conviction of assault in the second degree. Her mental state, conscious disregard of the risk, could be proven by circumstantial evidence. *State v. Dicus,* 727 S.W.2d 469, 472 [6] (Mo.App.1987). Defendant disregarded the substantial risk of serious physical injury to the nearly three-year-old child when she, an adult, struck him with enough force to knock him into a bedpost and to the floor. This disregard was a gross deviation from the standard of care a reasonable person would exercise in a similar situation. *See State v. King,* 723 S.W.2d 442, 443 [1] (Mo.App.1986).

JUDGMENT AFFIRMED.

CRANDALL, P.J., and REINHARD, J., concur.